UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----------------------------------------------------------------------x

MICHAEL RAPAPORT and SPECTRUM HOLDINGS
TECHNOLOGIES, LLC,

                                    Plaintiffs,          Civil Action No._____

            -against-                                    **NOTICE OF REMOVAL**

IDT CORPORATION, IDT SPECTRUM, INC., IDT
SPECTRUM, LLC, HOWARD JONAS, SAMUEL
(SHMUEL) JONAS, and MENACHEM ASH,

                                    Defendants.

----------------------------------------------------------------------x

**13 CV 0854**

**JUDGE KOELTL**

            PLEASE TAKE NOTICE that pursuant to 29 U.S.C. §§ 1332, 1441, and 1446 and Local

Civil Rule 81.1, Defendants, IDT Corporation ("IDT"), IDT Spectrum, Inc. ("Spectrum Inc."),

IDT Spectrum, LLC ("IDT Spectrum") (collectively, the "IDT Parties"), Howard Jonas, Shmuel

Jonas, and Menachem Ash, hereby give notice of removal of this action, which was commenced

by the filing of a summons and complaint by Plaintiffs, Michael Rapaport and Spectrum

Holdings Technologies, LLC (collectively, the "Rapaport Parties"), in the Supreme Court of the

State of New York, New York County on December 30, 2012, under the Index No.

654587/2012.

            1.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it

is being filed within thirty (30) days of the first date on which any of the defendants was served

with a copy of the summons and complaint (the "Complaint"). Defendants were served with the

Complaint on January 7, 2013.[1]

---

[1]      Service on the individual defendants was not completed until ten days after Plaintiffs
filed their January 10, 2013, proof of service. CPLR 308(2).

2.      The Supreme Court of the State of New York, New York County is located within the Southern District of New York.  Pursuant to 28 U.S.C. § 1446(a), venue therefore is proper in this Court as the district in which the state court action was brought.

3.      Pursuant to 28 U.S.C. § 1446(a), copies of all records, orders, process and pleadings that have been served on Defendants, and which are known to exist, are attached hereto as Exhibit A.  As of this date, no further pleadings have been filed or served in the state court action, and no further proceedings have been conducted in the state court action.

4.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the New York County Clerk of the Supreme Court of the State of New York, New York County.  A copy of the unexecuted Notice of Filing, without attachments, is attached hereto as Exhibit B.

5.      Defendants will promptly serve a copy of this Notice on counsel for Plaintiffs.

6.      By filing this Notice of Removal, Defendants do not waive any available defenses.

## THIS COURT HAS DIVERSITY JURISDICTION

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and therefore this action is removable to this Court pursuant to 28 U.S.C. § 1441.

8.      As set forth more fully below, the proper parties to this action are completely diverse.

9.      At the time Plaintiffs commenced this action in state court and at the time of removal, Plaintiff Michael Rapaport was (and is) a citizen of New York residing and domiciled at 227 Mosher Avenue in Woodmere, New York.  (Compl. ¶ 7.)

10.     At the time Plaintiffs commenced this action in state court and at the time of removal, Plaintiff Spectrum Holdings was (and is) a limited-liability company, whose sole member and managing member was (and is) Rapaport. (Id. ¶ 8.) Rapaport was (and is) a citizen of New York. (Id. ¶ 9.) Accordingly, for jurisdictional purposes, Plaintiff Spectrum Holdings is deemed a citizen of New York. Spectrum Holdings is organized under the laws of the State of Delaware. (Id. ¶ 8.)

11.     At the time Plaintiffs commenced this action in state court and at the time of removal, Defendant IDT was (and is) a corporation with citizenship in New Jersey and Delaware. IDT is incorporated under Delaware law and its principal place of business is located at 550 Broad Street, Newark, New Jersey. (Id. ¶ 9.)

12.     At the time Plaintiffs commenced this action in state court and at the time of removal, Defendant Spectrum Inc. was (and is) a corporation with citizenship in New Jersey and Delaware. Spectrum Inc. is incorporated under Delaware law and its principal place of business is 550 Broad Street, Newark, New Jersey. (Id. ¶ 10.)

13.     At the time Plaintiffs commenced this action in state court and at the time of removal, Defendant IDT Spectrum was (and is) a limited-liability company whose sole member and manager was (and is) IDT. (Id. ¶ 11.) IDT was (and is) a citizen of New Jersey and Delaware. (Id.) Accordingly, for jurisdictional purposes, IDT Spectrum is deemed a citizen of New Jersey and Delaware. IDT Spectrum is organized under the laws of the State of Delaware. (Id.)

14.     Defendant Shmuel Jonas is not a proper party to this action. At the time Plaintiffs commenced this action in state court and at the time of removal, Shmuel Jonas was (and is) an individual citizen of New Jersey residing and domiciled in Englewood, New Jersey. The

Complaint falsely alleges that Shmuel Jonas resides in New York. (Affidavit of Shmuel Jonas dated February 5, 2013 (attached hereto as Exhibit C) ¶ 3.)

15.    Defendant Howard Jonas is not a proper party to this action. At the time Plaintiffs commenced this action in state court and at the time of removal, Howard Jonas was (and is) an individual citizen of New York residing and domiciled in Riverdale, New York. (Compl. ¶ 12.) For the reasons set forth below, Plaintiffs fraudulently joined Howard Jonas to this action, and therefore his citizenship should be disregarded for removal purposes.

16.    Defendant Menachem Ash is not a proper party to this action. At the time Plaintiffs commenced this action in state court and at the time of removal, Mr. Ash was (and is) an individual citizen of New York residing and domiciled in Cedarhurst, New York. (Id. ¶ 14.) For the reasons set forth below, the Plaintiffs fraudulently joined Menachem Ash to this action, and therefore his citizenship should be disregarded for removal purposes.

17.    In essence, the thrust of Plaintiffs' case is their meritless claim against the diverse corporate defendants for a judicial declaration that Rapaport owns two portfolios of FCC licenses he acquired for the IDT Parties while managing their subsidiary, IDT Spectrum. Plaintiffs have sought to enhance that claim (the fourth and fifth causes of action for declaratory judgment) with related, baseless tort claims that fail on their face. Although the merits of the tort claims will be briefed in further detail in due course, what is clear at this stage of the litigation is that Plaintiffs have improperly joined individual IDT executives in their personal capacities, including Howard Jonas (IDT's CEO) and Menachem Ash (IDT's executive vice president for strategy and legal affairs), the only non-diverse New York defendants, in an attempt to defeat diversity jurisdiction and to prevent Defendants from removing this action to federal court. In a further attempt to defeat diversity jurisdiction, Plaintiffs used a false New York address for the other individually

4

named defendant, IDT COO Shmuel Jonas, notwithstanding that Plaintiffs are well aware that Shmuel Jonas resides in Englewood, New Jersey.

18.     Joinder is considered "fraudulent" for purposes of removal where "there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998); In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001) ("[S]everal circuits have indicated that the standard is more accurately described as requiring a showing that there is no reasonable basis for predicting liability on the claims alleged. This is the standard this Court applies.").

19.     Plaintiffs name Howard Jonas in his individual capacity as a defendant with respect to all six causes of action:  (i) breach of fiduciary duty; (ii) accounting; (iii) constructive trust; (iv) declaratory judgment as to the Level 3 portfolio; (v) declaratory judgment as to the LICT portfolio; and (vi) tortious interference with prospective economic relations.  (Compl. ¶¶ 53-86.)  Plaintiffs name Menachem Ash in his individual capacity as a defendant with respect to three of the causes of action:  (i) declaratory judgment as to the Level 3 portfolio; (ii) declaratory judgment as to the LICT portfolio; and (iii) tortious interference with prospective economic relations.  (Id. ¶¶ 71-86.)  Plaintiffs cannot state a cause of action in state court against Howard Jonas or Menachem Ash under any of these theories, which in essence are claims directed against the diverse corporate defendants.[2]

---

[2]     Under New York choice-of-law rules. "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1030 (2d Cir. 1996). Virtually all of the relevant conduct took place in New Jersey. To the extent there is any ambiguity as to how such a test will be resolved, however, Defendants provide comparable citations to New York law as well.

Breach of Fiduciary Duty Claim

20.     Plaintiffs do not and cannot state a claim against Howard Jonas for breach of fiduciary duty.  To state a claim for breach of fiduciary duty, a plaintiff must show "(1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach."  SalandStacy Corp. v. Freeney, No. 11-3439(JLL), 2012 WL 3638696, at *5 (D.N.J. Aug. 22, 2012) (applying New Jersey law); see also Rut v. Young Adult Inst., Inc., 74 A.D.3d 776, 777 (2d Dep't 2010) ("The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.").  This claim relies on Plaintiffs' allegation that Howard Jonas owes fiduciary duties "by reason of: the Agreement Rapaport entered into with [IDT] Spectrum; plaintiffs' contractual entitlement to receive an agreed portion of the revenues generated under the Agreement; and the control over those revenues exercised by defendants." (Compl. ¶ 54 (emphasis added).)

21.     Howard Jonas is not a party to the agreement Rapaport identifies as the basis for his claim.  (Compl., Ex. A.)  In addition, Plaintiffs do not (and cannot) allege any personal involvement by Howard Jonas in the allegedly tortious conduct.  Plaintiffs also fail to allege what duty of care any of the IDT Parties owed beyond their alleged contractual obligations, that any such duty was delegated to Howard Jonas, or that Howard Jonas personally breached such duty.  In the absence of such allegations, Howard Jonas cannot be held liable for any allegedly tortious activity taken by the IDT Parties.  "Under New Jersey law[,] the essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort.  A

predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." Deluxe Bldg. Sys., Inc. v. Constructamax, Inc., No. 06-2996(GEB), 2011 WL 322370, at *2 (D.N.J. Jan. 31, 2011) (emphasis added); see also Jatras v. Bank of Am. Corp., No. 09-3107(RBK/KMW), 2010 WL 5418912, at *8 (D.N.J. Dec. 23, 2010) ("In New Jersey, the general rule is that a corporate officer or director is not personally liable for the torts of a corporation based solely upon his official position with the corporation.").[3]   Accordingly, Plaintiffs do not and cannot state a cause of action against Howard Jonas in state court for breach of fiduciary duty.[4]

---

[3]      The standards for officer liability are substantially similar under New York law. See, e.g., Apollo H.V.A.C. Corp. v. Halpern Constr., Inc., 55 A.D.3d 855, 857 (2d Dep't 2008) ("A corporate officer may be held personally liable for a tort of the corporation if he or she committed or participated in its commission.") (emphasis added).

[4]      In a forthcoming motion to dismiss, IDT will further show that the claim is facially deficient (against all defendants) for two additional reasons. First, the underlying agreement between IDT Spectrum and Rapaport provides:

> Notwithstanding anything else herein to the contrary, [IDT] Spectrum shall remain the owner of all licenses in the Portfolio and shall be solely entitled to make any and all decisions related thereto (including, without limitation, on the sale or lease thereof), it being agreed that any Interest therein shall be passive and not entitle Rapaport to exert any power or indicia or ownership in respect thereof.

(Complaint, Ex. A ¶ 2(A).)  Rapaport's claims ignore the foregoing contractual rights.  Second, Plaintiffs' core allegation is that IDT Spectrum is supposedly refraining from selling or leasing licenses in which IDT Spectrum holds a majority interest (including as much as 87.5%) and thus harming Plaintiffs, who hold a minority interest (in many licenses as little as 12.5%) in such licenses.  The Plaintiffs do not (and cannot) identify any good-faith basis for their facially absurd allegation that IDT Spectrum is intentionally harming its own business interests and thereby breaching fiduciary duties to Rapaport.  In fact, the Plaintiffs have acknowledged that they were paid in full "any and all amounts due as of [December 24, 2012] to the Rapaport Parties pursuant to the Spectrum Portfolio Agreement," and IDT has also paid all additional commissions set forth in the Spectrum Portfolio Agreement based on revenues earned since December 24, 2012. (Ex. C ¶ 10.)

Accounting "Claim"

22.     Plaintiffs' accounting claim against Howard Jonas also fails on its face.  As a threshold matter, the inclusion of Howard Jonas on this claim is facially absurd – he does not have any individual interest in the licenses governed by the Agreement and therefore does not and cannot have any assets for which he could account.  (Ex. C ¶ 5.)  Plaintiffs also mistake a remedy for a cause of action.  An accounting is <u>not</u> a cause of action; it is a <u>remedy</u> that cannot independently support the inclusion of any defendant.  <u>See, e.g.</u>, <u>Stonebridge Bank v. Nita Props., LLC</u>, No. 09-5145(RBK/JS), 2011 WL 2173771, at *3 (D.N.J. June 1, 2011) ("An accounting is an equitable remedy that a plaintiff may pursue when legal remedies are unavailable."); <u>City of Newark v. Port Auth. of N.Y. and N.J.</u>, No. 98-5706(JCL), 1999 WL 33832526, at *1 (D.N.J. Apr. 23, 1999) (noting that plaintiff "seeks the equitable remedy of an accounting"); <u>World Book, Inc. v. IBM</u>, 354 F. Supp. 2d 451, 455 (S.D.N.Y. 2005) ("As for World Book's final 'cause of action,' the accounting requested is a remedy… it is not an independent cause of action.").  Plaintiffs' accounting "claim" also relies on their claim for a breach of fiduciary duty.  (Compl. ¶¶ 58-60.)  Accordingly, the remedy is unavailable against Howard Jonas for the additional reason that the underlying claim for breach of fiduciary duty fails, for the reasons set forth above.  <u>See</u> <u>Druck Corp.</u>, 2007 WL 258177, at *2 ("Because the breach of fiduciary duty claim is dismissed, plaintiff has no right to an accounting, which, on that theory is a remedy.").

Constructive Trust Claim

23.     Plaintiffs' claim for a constructive trust against Howard Jonas is also facially deficient.  As with the accounting claim, naming Howard Jonas as a defendant on this claim is nonsensical.  Howard Jonas does not have any individual interest in the licenses governed by the

Agreement and he therefore does not have any relevant assets on which to impose a constructive trust. (Ex. C ¶ 5.)  The claim also fails on its merits.  When determining whether to impose a constructive trust, New Jersey courts "look at whether (1) 'a party committed a wrongful act' and (2) whether 'the wrongful act resulted in a transfer or conversion of property that unjustly enriches the recipient.'"  JPMorgan Chase Bank, N.A. v. Candor Constr. Grp., Inc., No. 08-3836(WHW), 2010 WL 3210521, at *3 (D.N.J. Aug. 12, 2010); see also Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 399, 412 (S.D.N.Y. 1998) ("Four elements must be present in order to impose a constructive trust: "(1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer made in reliance on that promise; (4) and unjust enrichment.") (applying New York law).  Plaintiffs allege that Howard Jonas's wrongful acts arise out of his alleged fiduciary duties and/or promises made to Defendants.  (Compl. ¶¶ 65-70.)  Plaintiffs cannot state the wrongful conduct prong of the test for two independent reasons.  First, Howard Jonas did not owe any fiduciary duties to Defendants for the reasons set forth above.  Second, Plaintiffs do not and cannot allege that Howard Jonas made any of the purported promises that Defendants describe in their complaint, much less that he breached any of those promises.

24.    Plaintiffs also cannot state the unjust enrichment prong of the test for a constructive trust.  Plaintiffs fail to (and cannot) allege (i) that Howard Jonas ever received a benefit from Plaintiffs in his individual capacity; or (ii) that Plaintiffs ever expected remuneration from Howard Jonas as an individual; or (iii) that Howard Jonas unjustly retained any benefit in his individual capacity causing him to be enriched beyond any purported contractual rights.  Accordingly, Plaintiffs do not (and cannot) state a claim for a constructive trust against Howard Jonas.  See VRG Corp. v. GKN Realty Corp., 135 N.J 539, 554 (1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from

the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.").

Declaratory Judgment Claims

25.     Howard Jonas and Menachem Ash are improper defendants to Plaintiffs' declaratory judgment claims. The declaratory judgment claims concern "the ownership of the Level 3 portfolio" and "the ownership of the LICT portfolio" arising out of Defendants' contentions that "IDT and/or Spectrum is the true owner" of the Level 3 and LICT portfolios. (Compl. ¶¶ 72-73, 77-78 (emphasis added).) Howard Jonas and Menachem Ash, in their individual capacities, have no interest or connection to the dispute over whether IDT, Spectrum or Plaintiffs own the Level 3 and LICT portfolios, and Plaintiffs fail to allege any such interest. (Ex. C ¶¶ 6-9.) Such claim consists of a dispute between IDT, Spectrum and Plaintiffs, as confirmed by Plaintiffs' allegations themselves. Accordingly, Plaintiffs cannot state a cause of action against Howard Jonas or Menachem Ash in state court as to the declaratory judgment claims. Pampillonia, 138 F.3d at 461 ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy.").

Tortious Interference Claim

26.     Howard Jonas and Menachem Ash also are improper defendants to Plaintiffs' claim for tortious interference with prospective economic relations. On that claim, a plaintiff must show (1) a prospective contract that the plaintiff had a reasonable expectation of entering into, provided that the defendant was aware of such expectation; (2) that the defendant committed a legally "wrongful act" that "willfully induced the breach of a legal right"; (3) the interference was with malice, meaning the harm was inflicted intentionally and without

justification or excuse; (4) the interference caused the loss of the contract; and (5) the interference resulted in damages. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993); Printing Mart-Morristown v. Sharp Elecs., 116 N.J. 739, 751-52 (1989); Louis Schlesinger Co. v. Rice, 4 N.J. 169, 180-81 (1950); Kopp, Inc. v. United Techs., 223 N.J. Super. 548, 560 (App. Div. 1988).[5]

27.     Plaintiffs do not (and cannot) allege any facts establishing any of the elements of such a claim against Howard Jonas.  Plaintiffs do not allege any facts establishing Howard Jonas's participation in the alleged tortious activity, any facts establishing his personal awareness of Plaintiffs' purported "business relations with a number of third parties," nor any facts establishing his alleged "malice."  (Compl. ¶¶ 82-84.)  Plaintiffs also fail to allege what duty of care the IDT Parties owed to Plaintiffs beyond their alleged contractual obligations, that any such duty was delegated to Howard Jonas or that he personally breached such duty.  Plaintiffs thus have no actionable claim against Howard Jonas for tortious interference.  Lightning Lube, 4 F.3d at 1167; Deluxe Bldg. 2011 WL 322370, at *2; Jatras, 2010 WL 5418912, at *8.

28.     The Complaint contains virtually no substantive allegations at all concerning Menachem Ash, or connecting him in any way to any alleged tortious activity, with the exception of a single paragraph regarding his purported discussion with IDT's contractor, Doug

---

[5]     The standard for tortious interference with prospective business relations under New York law is substantially similar.  See, e.g., Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008) ("To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."); see also GS Plasticos Limitada v. Bureau Veritas, 88 A.D.3d 510, 510 (1st Dep't 2011) (to establish claim for tortious interference with prospective business relationships, "a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by 'wrongful means' or that defendant acted for the sole purpose of harming the plaintiff" and "an implicit element of acting for the sole purpose of harming the plaintiff is knowledge of the prospective economic relation").

Lockie, regarding the legal dispute between the IDT Parties and Rapaport regarding ownership of the Level 3 and LICT portfolios of licenses. (Compl. ¶¶ 48-50.) Even with that allegation deemed true, Plaintiffs do not (and cannot) allege a claim against Mr. Ash for tortious interference. Indeed, as with Howard Jonas, Plaintiffs fail to allege what duty of care the IDT Parties owed to Plaintiffs beyond their alleged contractual obligations, that such duty was delegated to Mr. Ash, or that he personally breached such duty. Deluxe Bldg., 2011 WL 322370, at *2; Jatras, 2010 WL 5418912, at *8; Apollo, 55 A.D.3d at 857.

29.    The claim also fails on its face because Plaintiffs do not allege any damages arising from Menachem Ash's purported statement to Doug Lockie that ownership of the licenses in question was in dispute because Rapaport misappropriated the licenses from IDT while he was working as President of IDT Spectrum. The claim requires Plaintiffs to show that Mr. Ash prevented Plaintiffs from forming a contract with Mr. Lockie. Lighting Lube, 4 F.3d at 1167; Doe v. White Plains Hosp. Med. Ctr. (WPHMC), No. 10 Civ. 5405(GBD), 2011 WL 2899174, at *4 (S.D.N.Y. July 8, 2011) ("To sustain a claim for tortious interference with prospective economic advantage. Plaintiffs must allege a specific business relationship that he was prevented from entering into by reason of the purported tortious interference.") (emphasis added). Plaintiffs do not make those allegations because they cannot: Mr. Lockie continues to work with Plaintiffs and, in fact, does not work with the IDT Parties because of his continuing business relationship with Plaintiffs, notwithstanding that Mr. Lockie was IDT's consultant and advisor prior to being poached by Rapaport. (Ex. C ¶ 11.) Accordingly, Plaintiffs do not and cannot state a cause of action against Howard Jonas or Menachem Ash in state court as to Plaintiffs' claim for tortious interference with prospective economic relations.

30.    Where Defendants Howard Jonas and Menachem Ash were improperly joined, the Court should disregard their citizenship. Felipe v. Target Corp., 572 F. Supp. 2d 455, 462 (S.D.N.Y. 2008) (in event of improper joinder, "courts should overlook the presence of a non-diverse defendant"); Pampillonia, 138 F.3d at 461 (disregarding citizenship of improperly joined non-diverse defendant). The remaining Defendants in this action – the IDT Parties and Shmuel Jonas – are diverse from the Plaintiffs.

31.    Plaintiffs seek relief that would confer a benefit on Plaintiffs that has a value in excess of $75,000. Plaintiffs expressly allege $20 million in compensatory damages and $20 million in punitive damages. (Compl. ¶¶ A, F.)

32.    Removal is thus appropriate under 28 U.S.C. § 1441(a) because the state court action is a matter between citizens of different States with the amount in controversy exceeding $75,000, exclusive of interest and costs. Consequently, this Court has original jurisdiction under 28 U.S.C. § 1332.

## ALL PROPERLY SERVED DEFENDANTS CONSENT TO REMOVAL OF THIS ACTION

33.    All properly served defendants in this action, each of whom is represented by the undersigned counsel, join in and consent to this removal. Although fraudulently joined defendants need not consent to removal, Howard Jonas and Menachem Ash, who are fraudulently joined to this action for the reasons set forth above, nevertheless consent to this removal (in addition to all of the other properly served defendants).

## CONCLUSION

34.    For the foregoing reasons, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and pursuant to Local Civil Rule 81.1, this Court has jurisdiction over this action and this action is

properly removed from the Supreme Court of the State of New York, New York County to the United States District Court for the Southern District of New York.

35.     Should the Plaintiffs file a motion to remand this case, Defendants respectfully request an opportunity to respond more fully in writing.


Dated: Armonk, New York
        February 5, 2013


                                   BOIES, SCHILLER & FLEXNER LLP


                              By:  _____

                                   Edward Normand
                                   Jason Cyrulnik
                                   333 Main Street
                                   Armonk, New York 10504
                                   Telephone:  914.749.8200
                                   Facsimile:  914.749.8300
                                   *Attorneys for All Defendants*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF <u>NEW YORK</u>

-------------------------------------------------------------x

MICHAEL RAPAPORT and SPECTRUM
HOLDINGS TECHNOLOGIES, LLC,

                    Plaintiff/Petitioner,

           - against -                                        Index No. <u>654587/2012</u>

IDT CORPORATION, IDT SPECTRUM, INC., IDT
SPECTRUM, LLC, HOWARD JONAS, SAMUEL
(SHMUEL) JONAS, and MENACHEM ASH,

                    Defendant/Respondent.

-------------------------------------------------------------x

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

     PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

     The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

     Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: <u>1/07/2013</u>

_____ (Signature)          <u>101 PARK AVENUE</u>          (Address)
                                                NEW YORK, NY  10178
JEFFREY C. BERMAN           (Name)              _____

CURTIS, MALLET-PREVOST,     (Firm Name)         212-696-6000              (Phone)
COLT & MOSLE, LLP
                                                jberman@curtis.com        (E-Mail)

To:    <u>SEE ATTACHED LIST</u>

       _____    _____

       _____    _____

IDT Corporation
520 Broad Street
Newark, NJ 07102

IDT Spectrum, Inc.
520 Broad Street
Newark, NJ 07102

IDT Spectrum, LLC
520 Broad Street
Newark, NJ 07102

Howard Jonas
3020 Palisade Avenue
Riverdale, NY  10463

Samuel (Shmuel) Jonas
66 West 85th Street, Apartment 4B
New York, NY  10024

Menachem Ash
30 White Drive
Cedarhurst, NY  11516

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------- X

MICHAEL RAPAPORT and SPECTRUM HOLDINGS
TECHNOLOGIES, LLC,                                                :

                                   Plaintiffs,                 :

                -against-                            :

IDT CORPORATION, IDT SPECTRUM, INC., IDT           :
SPECTRUM, LLC, HOWARD JONAS, SAMUEL               :
(SHMUEL) JONAS, and                                               :
MENACHEM ASH                                                      :
                                        :

                           Defendants.                :

------------------------------------------------------------------------- X

Index #: 654587/2012

**SUMMONS**

To the above named Defendants:

IDT Corporation
520 Broad Street
Newark, NJ 07102

IDT Spectrum, Inc.
520 Broad Street
Newark, NJ 07102

IDT Spectrum, LLC
520 Broad Street
Newark, NJ 07102

Howard Jonas
3020 Palisade Avenue
Riverdale, NY 10463

Samuel (Shmuel) Jonas
66 West 85th Street, Apartment 4B
New York, NY 10024

Menachem Ash
30 White Drive
Cedarhurst, NY 11516

You are hereby summoned to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Plaintiffs designate New York County as the place of trial. The basis of venue is: (i) CPLR § 302 because the Defendant transacts business in New York and (ii) CPLR § 503 because one of the defendants resides in New York County.

Dated: New York, New York
            December 30, 2012

                                Respectfully submitted,

                                CURTIS, MALLET-PREVOST
                                COLT & MOSLE LLP


                                By: __/s/ Jeffrey C. Berman___
                                        Turner P. Smith
                                        Steven J. Reisman
                                        Jeffrey C. Berman

                                101 Park Avenue
                                New York, NY 10178
                                Tel: (212) 696-6000

                                *Attorneys for Plaintiffs Michael Rapaport and*
                                *Spectrum Holdings Technologies, LLC*

13847367

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------- X
                                                              :
MICHAEL RAPAPORT and SPECTRUM HOLDINGS              :
TECHNOLOGIES, LLC,                                            :   Index #:
                                                              :
                            Plaintiffs,                       :
                                                              :
            -against-                                         :   **COMPLAINT**
                                                              :
IDT CORPORATION, IDT SPECTRUM, INC., IDT            :
SPECTRUM, LLC, HOWARD JONAS, SAMUEL                 :
(SHMUEL) JONAS, and                                           :
MENACHEM ASH,                                                 :
                                                              :
                            Defendants.                       :
                                                              :
------------------------------------------------------------------------- X

        Plaintiffs Michael Rapaport and Spectrum Holdings Technologies, LLC, for their

complaint against defendants IDT Corporation, IDT Spectrum, Inc., IDT Spectrum, LLC,

Howard Jonas, Samuel (Shmuel) Jonas, and Menachem Ash allege as follows:

## NATURE OF THE ACTION

        1.      From 2007 until his unceremonious firing in 2012, plaintiff Michael

Rapaport loyally served his employer, IDT Corporation ("IDT"), and its mercurial father-son

management team, defendants Howard and Samuel (Shmuel) Jonas (CEO and COO,

respectively).  During that time, Rapaport generated millions of dollars in profits for defendants

through his hard work and keen eye for business opportunities.  Rapaport's most valuable

contribution to IDT and the Jonases has been as CEO of IDT Spectrum, LLC ("Spectrum").

Spectrum is a wholly owned subsidiary of IDT which, through Rapaport's sole efforts, is now

the largest single holder of wireless spectrum licenses in the United States in the 39 GHz range

that has satisfied the Federal Communications Commission's (the "FCC") regulatory

requirements for continual license holding.  Rapaport has also built, from the ground up, the only

13851493

current spectrum leasing business available in 39 GHz.  In the process he has given third parties access to and use of this valuable spectrum and brought value back to the entire 39 GHz band. Through Rapaport's skill and hard work, Spectrum emerged as the first holder of these licenses to have succeeded in making money from them.

2.    Despite Rapaport's extraordinary success in monetizing the Spectrum portfolio, IDT fired him in July 2012, after Rapaport  protested defendants' attempts to pay him less than what he was owed under a profit sharing agreement related to the Spectrum portfolio. But IDT did not stop at simply firing Rapaport.  Since terminating him, defendants have engaged in a malicious campaign to prevent Rapaport from engaging in his own line of work developing spectrum licenses he holds under the name of Spectrum Holdings Technologies, LLC ("SH").

3.    Rapaport is the sole owner of SH, and the portfolio of licenses it holds was acquired by Rapaport in May 2012 with IDT's knowledge and explicit acquiescence.  At the time, IDT determined that it was too risky to purchase this particular portfolio of licenses in light of the fact that they were all set to expire on June 1, 2012 and would be rendered worthless if the FCC declined to grant extensions.  IDT also had no interest in using its own capital to fund the acquisition or build-out of the licenses in the portfolio.  Instead, IDT agreed that Rapaport could purchase the licenses in SH's name, such that Rapaport and SH would incur the entire risk if the FCC denied the necessary extensions.  Now, many months later (and after firing Rapaport), defendants have reversed course.  They insist that IDT is the true owner of the SH portfolio.  To drive that home, they have embarked on a campaign of intimidation, slander and other tortious practices designed to undermine SH's business and prevent Rapaport from earning a living from the SH portfolio.  Defendants have gone so far as to threaten a third party doing business with Rapaport, falsely claiming that Rapaport has "stolen" the SH portfolio from IDT.

-2-

4.    As will be shown below, defendants have engaged in outrageous acts of misconduct directed at plaintiff and his family, for the sole purpose of lining their own pockets at his expense. Their actions are designed to pressure Rapaport to give up his contract rights and cede a substantial part of his investment in the Spectrum license portfolio and the SH portfolio back to IDT. Defendants' pressure tactics have included cutting off the Rapaport family's medical coverage, disabling his company email access, terminating him as an IDT employee, and threatening to initiate legal action against innocent third parties doing business with Rapaport by baselessly contending that IDT owns the SH portfolio.

5.    After IDT repeatedly refused to pay Rapaport the profit sharing it undisputedly owed to him, Rapaport and SH filed suit in this Court on August 10, 2012 seeking, *inter alia*, payment in full of Rapaport's contractual share in the profits earned from the licensing and sale of Spectrum portfolio assets. Although that suit was settled, not long after it was filed, defendants stepped up their campaign to destroy Rapaport's ability to pursue his own line of work.

6.    By this lawsuit, plaintiffs seek to resolve all of their outstanding disputes with IDT so that Rapaport can move on, personally and professionally, without threat of continuing interference from IDT. To that end, plaintiffs seek a declaration that Spectrum Holdings Technologies, LLC is the sole owner of the licenses and other assets in the SH portfolio, so that defendants will cease perpetuating their false claim that they hold a competing ownership right in the SH portfolio licenses. Plaintiffs also seek an award of money damages to compensate them for the economic injury caused by defendants' unlawful interference with plaintiffs' existing and prospective business relationships. In addition, Rapaport asks this Court to impose a constructive trust over the proceeds of the Spectrum portfolio in order to ensure that

-3-

it is managed in a manner that maximizes its value. Plaintiffs also seek damages from defendants for breach of fiduciary duty through their wholesale refusal to generate any significant amount of revenue from the Spectrum portfolio since Rapaport's termination from IDT.

## THE PARTIES

7.     Plaintiff Michael Rapaport is an individual residing in Woodmere, New York. As relevant here, Rapaport is a former employee of defendant IDT, where he served as the President and Chief Executive Officer of both IDT Spectrum Inc. and defendant Spectrum.

8.     Plaintiff Spectrum Holdings Technologies, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Hewlett, New York. Rapaport is the 100% owner of SH and its managing member. As relevant here, pursuant to an August 2011 agreement signed by Rapaport and Spectrum, Rapaport assigned to SH his interests in the licenses subject to the agreement at issue in this lawsuit. SH also is the 100% owner of all the licenses in the SH portfolio.

9.     Defendant IDT is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 520 Broad Street, Newark, New Jersey 07102. IDT is a publicly-traded company listed on the New York Stock Exchange. IDT is a multinational corporation that invests in emerging technologies relating to telecommunications, energy, media, and banking.

10.     Defendant IDT Spectrum, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 520 Broad Street, Newark, New Jersey 07102. IDT Spectrum, Inc. is a wholly-owned subsidiary of defendant IDT and the holding company for defendant Spectrum.

-4-

11.    Defendant Spectrum is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 520 Broad Street, Newark, New Jersey 07102.  Spectrum is a wholly owned subsidiary of IDT.

12.    Defendant Howard Jonas is an individual who maintains a residence at 3020 Palisade Avenue, Riverdale, New York 10463.  As relevant here, Howard Jonas is the founder, Chairman of the Board and Chief Executive Officer of IDT and a member of the Board of Directors of Spectrum.  As CEO and the largest single shareholder of IDT, Howard Jonas is the ultimate decision maker for both IDT and Spectrum.

13.    Defendant Samuel (Shmuel) Jonas is an individual who maintains a residence at 66 West 85th Street, Apartment 4B New York, New York 10024.  As relevant here, Shmuel Jonas is the Chief Operating Officer of IDT, in which capacity he oversees the operations of Spectrum.

14.    Defendant Menachem Ash is an individual who maintains a residence at 30 White Drive, Cedarhurst, New York 11516.  As relevant here, Ash is the Senior Vice President of Legal at IDT, in which capacity he serves as an attorney and business advisor for IDT, Spectrum, IDT Spectrum Inc., and the Jonases.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over the defendants as they reside in and/or engage in business in New York.

16.    Venue is proper pursuant to CPLR § 503 as one of the defendants resides in New York County.

13851493

## FACTUAL BACKGROUND

The Spectrum Portfolio

17.    Rapaport was hired as a full-time employee of IDT in February 2007 and remained employed by IDT until his termination on July 25, 2012, the circumstances of which are described below.

18.    During his employment at IDT, Rapaport recognized the potential value in a portfolio of licenses held by IDT (through Spectrum) governing operations on certain portions of the wireless spectrum; he realized that these licenses were potentially worth far more than defendants believed. The essence of Rapaport's strategy was that these licenses, if developed properly in compliance with FCC regulations, could be worth millions of dollars to cellular phone companies by enabling them to switch from using fiber-optic cables to using portions of the fixed wireless spectrum covered by the licenses in order to facilitate the flow of data to and from the providers. Because of the high cost of leasing fiber-optic cables, Rapaport recognized that these companies could save substantial amounts of money by transmitting this information wirelessly.

19.    Rapaport urged defendants to renew Spectrum's licenses and satisfy regulatory requirements in order to solidify its license holdings and enhance the value of Spectrum's licensed assets. The Jonases were initially skeptical about the future value of Spectrum's licenses, as reflected by the fact that IDT wrote down the value of those licenses to zero on its balance sheet. However, after Rapaport implored the Jonases to reconsider and offered to personally contribute to the renewal and development costs, the Jonases agreed to have Spectrum enter into an agreement with Rapaport by which Spectrum would hold the licenses and split both the costs and the profits of the project with Rapaport. Rapaport subsequently renewed a number of licenses from the FCC in Spectrum's name, including what

are referred to by the parties in their agreement as the Schedule A Licenses and the Schedule B Licenses. Rapaport personally paid a portion of the renewal fees charged by the FCC as well as his share of the development costs, as the parties had agreed.

20.     The parties' joint investment in this license portfolio is embodied in a written agreement dated October 13, 2010 (the "Agreement"). The Agreement addresses, *inter alia*, the work required to satisfy FCC regulatory requirements for portions of the spectrum for which Rapaport and Spectrum obtained licenses, the maximum costs that each party would incur during the regulatory process, and the amounts that each party would receive when Spectrum relicensed any portions of the spectrum for which they had obtained licenses. A true and correct copy of the Agreement, including the schedules listing the licenses subject to the Agreement, is attached hereto as Exhibit A and incorporated by reference.

21.     Specifically, the Agreement provides that Rapaport would fund 10% of the cost of both the renewal payments for the Schedule A Licenses and the necessary costs to assist Spectrum with satisfying its regulatory obligations. In return, Spectrum agreed that Rapaport would receive a 12.5% equity interest in the Schedule A Licenses, meaning that he would be entitled to 12.5% of any revenues generated by the sale or lease of those licenses. Additionally, Rapaport was entitled to receive a 5% commission for the sale of any of the Schedule A Licenses. With respect to the Schedule B Licenses, the Agreement provides that Rapaport would fund 49% of the cost of both the renewal payments and the regulatory process. In return, Rapaport would be entitled to a 49% equity interest in any revenues generated by the sale or lease of the Schedule B Licenses. The Agreement provides that Spectrum is obligated to pay Rapaport his stated share of the revenues within 30 days of Spectrum's receipt of any such revenues.

13851493

22.    Rapaport complied with his obligations under the Agreement at all times, including making all required payments to Spectrum to obtain the licenses and assisting in retaining consultants to provide guidance with respect to the regulatory process. Rapaport invested more than $100,000 of his own money (a substantial portion of his net worth) as his contractual share of the license renewal costs, as well as significant additional amounts to fund the work required to comply with the FCC's requirements.

23.    In addition to provisions relating to the parties' rights and responsibilities with respect to the licenses, the Agreement also provides that Rapaport's interest in any revenues generated from the sale or lease of the licenses is independent of whether he continues to be employed by IDT.

24.    After successfully securing renewal of the licenses by the FCC, Rapaport oversaw all of the day-to-day work relating to the regulatory process, as well as the leasing business and business development initiatives. In fact, Rapaport was the only IDT employee spending any significant amount of time working on the Spectrum portfolio. Among other things, Rapaport worked with multiple contractors throughout the country to develop and build out new technologies in order to comply with FCC regulations and to maximize the value of the licenses to potential customers. Rapaport interfaced regularly with the FCC in order to ensure that Spectrum was meeting all applicable requirements. By October 2011, the FCC had certified that Spectrum had met these requirements.

25.    During this process, Rapaport also approached third parties that he identified as potentially interested in buying or leasing the licenses from Spectrum. As Rapaport expected, there was significant interest in these licenses, once Rapaport explained the cost-saving potential and once Rapaport could assure customers and potential purchasers that the licenses

had satisfied what the FCC refers to as the "substantial service" requirements. Beginning in mid-to late- 2011, Spectrum had begun generating revenue from the licenses as a result of Rapaport's negotiation of sales and leases to third parties.

26.    The most significant potential customer with whom Rapaport engaged in negotiations during this period was MetroPCS, a wireless telecommunications provider. MetroPCS had expressed an interest in obtaining 28 and 39 GHz spectrum from Spectrum. The four 39 GHz licenses MetroPCS sought to obtain are part of the Spectrum portfolio and subject to the terms of the Agreement; the other four portions of 28 GHz licenses that were disaggregated pursuant to Spectrum's agreement with MetroPCS were owned by Spectrum but were not covered by the Agreement. Over the course of approximately nine months, Rapaport negotiated the sale of these licenses and portions of licenses to MetroPCS.

27.    In August 2011, Rapaport entered into an agreement (the "Assignment of Interest") whereby he assigned all of his interests under the Agreement to SH, an entity which Rapaport wholly owns. This Assignment of Interest was explicitly consented to by Spectrum. Pursuant to its terms, all amounts owed to Rapaport under the Agreement would be paid directly to SH.

28.    In December 2011, when it became clear to Rapaport that the MetroPCS transaction was very likely to be concluded successfully, he advised defendants, including both Jonases, of the progress he had made in the negotiations. Up to this point, Spectrum had been complying with its obligations under the Agreement, making monthly payments to SH in accordance with the Assignment of Interest of all amounts Rapaport was owed. However, once defendants learned that the MetroPCS deal, which was far more lucrative than all of the previous

deals involving the licenses, was nearing completion, their behavior toward Rapaport abruptly shifted.

29.    Starting in December 2011, Spectrum simply stopped making the required monthly distributions to SH. This breach of the Agreement was orchestrated by the Jonases and other personnel working for IDT.

30.    Recognizing that closing the MetroPCS deal would entitle plaintiffs to a sizable payout, defendants decided to have Spectrum breach its obligations under the Agreement in order to pressure Rapaport to give up a substantial portion of his Spectrum investment. Specifically, defendants demanded that Rapaport reduce his distribution percentages to only 18% across both of the Schedule A and Schedule B pools of licenses. If Rapaport had accepted this demand, he would receive far smaller payouts, which is self-evident from the fact that 18% is much closer to the 12.5% Rapaport is entitled to from sales and/or leases of the Schedule A Licenses than the 49% he gets from the Schedule B Licenses. Further, there are more than twice as many Schedule B Licenses than Schedule A Licenses, such that any reasonable proposal should have been closer to 49% than to 12.5%. Considering this, Rapaport rejected the demand, expecting that Spectrum would still honor the Agreement. It did not.

31.    Thereafter, the Jonases increased their pressure on Rapaport. Prior to December 2011, all payments made to SH pursuant to the Agreement and the Assignment of Interest had been properly treated as miscellaneous income (covered by IRS Form 1099-MISC) and thus not subject to W-2 withholding taxes. Liore Alroy, the Deputy Chairman of IDT, suggested to the Jonases in or around December 2011 that they should change the tax treatment of SH distributions to ordinary taxable income. This would put pressure on Rapaport by significantly increasing the tax cost of the distributions and adding W-2 withholding. Even

-10-

though they all knew that the distributions to plaintiffs should properly be classified as miscellaneous income, Alroy and the Jonases each explicitly threatened Rapaport by telling him that IDT would begin treating the payouts to SH as ordinary taxable income unless Rapaport agreed to amend the Agreement to their liking.

32.    Mitch Silberman, the Chief Accounting Officer for IDT, admitted to Rapaport that the proposed changes in the tax treatment of his payouts were strange and that IDT would see no real benefit from subjecting the distributions to W-2 tax treatment.  Silberman also showed Rapaport that he was maintaining files on his computer reflecting the actual amounts Rapaport was owed; Silberman's calculations did not subject those amounts to W-2 treatment.

33.    When it became clear to defendants that Rapaport would not bend to their pressure, they decided simply to stop paying him what he was owed.  Beginning in December 2011, all payments to SH ceased.  Nonetheless, Rapaport continued meeting all of his contractual obligations, including bringing the negotiations with MetroPCS to a close.

34.    During April 2012, Rapaport completed the nine-month negotiation process he engaged in with Metro PCS, resulting in a transaction by which Spectrum sold eight licenses to MetroPCS for $6.8 million.  Of the four licenses subject to the Agreement, one was a Schedule A License and three were Schedule B Licenses; the vast majority of licenses in IDT's 39 GHz portfolio are Schedule B Licenses, including the licenses chosen by MetroPCS.  Based on the payment provisions in the Agreement, plaintiffs were entitled to receive a total of $1,360,813 within 30 days of Spectrum's receiving the $6.8 million in proceeds from the MetroPCS sale.  Spectrum in fact received full payment of the $6.8 million from MetroPCS in April 2012.

-11-

13851493

35.    In April 2012, SH received $500,000 as a partial distribution of the $1,360,813 plaintiffs are owed for the MetroPCS transaction. Despite Rapaport's continuing demands for full payment and defendants' repeated acknowledgment that plaintiffs were still owed the remaining $860,813, defendants refused to pay a single dollar more.

36.    On Wednesday, July 25, 2012, Rapaport discovered that access to his email account at IDT had been cut off. The next day, Rapaport spoke to Menachem Ash, an in-house attorney at IDT, and asked him whether he had been fired. Ash refused to answer.

37.    A week later, on August 1, 2012, Rapaport's wife, who suffers from a serious medical condition, was informed by her doctor that the medical insurance coverage she received through IDT had been terminated. Defendants were all well aware of Mrs. Rapaport's condition. In fact, she learned that she had been stripped of her coverage only when she was visiting a doctor that Howard Jonas had referred her to, and who participated in the insurance plan the Rapaports obtained through IDT. Rapaport later learned from the insurance company that IDT had cancelled coverage for him and his family as of August 1, 2012. Rapaport was never advised that his family's coverage was being terminated, nor was he offered the opportunity to continue the coverage, as required by federal law.

38.    On August 3, 2012, IDT took the final step in what can only be viewed as a stealth termination of Rapaport. The paycheck he received on that date was reduced pro rata based upon an apparent termination date of July 25, 2012, the same date Rapaport's corporate email access had been cut off. Although IDT refuses to acknowledge it, it is plain that IDT terminated Rapaport as an employee of IDT and as the CEO of Spectrum on July 25, 2012.

39.    Due to defendants' continued refusal to pay plaintiffs the amounts they were owed, both from the MetroPCS transaction and other leasing activity, on August 10, 2012,

plaintiffs filed suit in this court against IDT Corporation, IDT Spectrum, Inc., IDT Spectrum, LLC, Howard Jonas, Samuel (Shmuel) Jonas seeking money damages and other relief. Prior to the filing of an answer, the parties reached a settlement of those claims, pursuant to which plaintiffs agreed to dismiss the complaint with prejudice. That case was assigned index number 652802/2012.

40.    Since Rapaport's termination by IDT, defendants have failed to put in place competent management capable of maximizing the value of (or even receiving any value at all from) the Spectrum portfolio. As the MetroPCS deal negotiated by Rapaport demonstrates, the Spectrum portfolio is potentially worth tens, if not hundreds, of millions of dollars. Despite repeated requests by plaintiffs, defendants have not informed plaintiffs who, if anyone, is currently managing the Spectrum portfolio nor whether any sales or leasing activity has occurred since Rapaport's termination. Upon information and belief, defendants have made little to no effort to generate any revenue from the Spectrum portfolio, essentially allowing an incredibly valuable asset to lie dormant.

41.    Upon information and belief, IDT customers who have purchased or leased Spectrum licenses have been frustrated by defendants' unwillingness to install personnel capable of properly servicing the licenses and addressing customer concerns. By failing to install competent management, defendants are not only doing a disservice to their customers, but also are depriving plaintiffs of the benefit of their bargain and are unjustly enriching themselves by exercising complete dominion over an extraordinarily valuable portfolio of wireless spectrum licenses.

13851493

The SH Portfolio

42.    In or around May 2012, Rapaport, who was at that time still employed by IDT and believed that defendants would fulfill their obligation to pay him the amounts he was owed pursuant to the Agreement, approached IDT to discuss an opportunity to obtain two new portfolios of 28 and 39 GHz wireless spectrum licenses from LICT Corporation ("LICT") and Level 3 Communications Inc. ("Level 3"). Rapaport believed that the LICT licenses (the "LICT portfolio") and the Level 3 licenses (the "Level 3 portfolio," and together with the LICT portfolio, the "SH portfolio") would present IDT with additional opportunities to profit from Rapaport's insight and skill in realizing value from this particular market niche -- a portion of the wireless spectrum that previously had been perceived as not to be worth the development costs.

43.    IDT was skeptical of the SH portfolio's value. Further, IDT did not want to incur the risk that Rapaport would be unable to obtain extensions from the FCC; Rapaport and IDT were reviewing their options with respect to the purchase of the portfolio only a few days before the FCC's deadline for meeting its "substantial service" requirements was set to expire, Rapaport would need to apply for 60-day deadline extensions in order to have sufficient time to perform the work necessary to meet these requirements. Because the FCC typically takes more than a month to rule on an extension request, Rapaport would have to perform the lion's share of the development work (and expend the lion's share of the associated costs) before the FCC issued its rulings on the extension requests. If Rapaport did not obtain the extensions, the FCC would cancel the licenses and the amounts expended to purchase them, as well as the amounts expended to meet the substantial service requirements, would be lost. Due to their concern over Rapaport's ability to obtain extensions, as well as the significant development costs associated

-14-

with building out the SH portfolio, the defendants decided they did not want IDT to purchase the licenses from Level 3 or LICT or contribute to the development costs.

44.    Instead, IDT explicitly agreed that Rapaport could obtain both the LICT and Level 3 licenses in SH's name and for SH's sole risk. Rapaport subsequently did so, with the full knowledge and blessing of defendants. Rapaport never agreed to any arrangement by which he would be obligated to transfer any portion of SH's interest in the SH portfolio to IDT, Spectrum, or any other IDT-affiliated entity. Although Rapaport discussed the possibility that he might later agree to transfer some percentage of SH's interest in the SH portfolio to Spectrum in exchange for Spectrum's contributing to the purchase price and development costs, no such agreement was ever reached and the licenses remain SH's property.

45.    Since May 2012, when SH purchased these licenses, Rapaport has expended more than $300,000 of his own money to cover development and license renewal costs associated with the SH portfolio. Throughout that time, defendants never asserted that SH did not own the SH portfolio or that SH was obligated to transfer any portion of its ownership interest in the licenses to any IDT-affiliated entity. To the contrary, IDT had no involvement in the purchase of the licenses or the build-out process, nor did defendants offer to reimburse Rapaport for the funds he invested. If Rapaport had failed to obtain the necessary extensions, the FCC would have cancelled the licenses (in fact, the FCC approved the extension requests approximately six weeks after Rapaport applied for them and only after he had expended a significant amount of his own money meeting the FCC's substantial service requirements). He took that risk for his own account and there is no question that had the licenses been cancelled, IDT would not have offered to reimburse Rapaport the more than $300,000 he invested in the start-up effort.

-15-

46.    After Rapaport had been fired and subsequently filed his initial lawsuit over IDT's refusal to pay him the amounts he was undisputedly owed from the MetroPCS transaction, IDT swiftly reversed its position, asserting for the first time that SH was obligated to transfer ownership of the SH portfolio to IDT. All IDT contended it had to do to seize ownership of the SH portfolio was reimburse Rapaport for the amounts he paid to purchase the licenses; IDT did not even offer to reimburse Rapaport the amounts he invested in the build-out process. In short, IDT contended that it was entitled to buy the SH portfolio for less than what Rapaport had actually spent to purchase and develop the licenses. There is no legitimate basis, contractual or otherwise, for IDT's position.

47.    Defendants' actions with respect to the SH portfolio go well beyond simply asserting an ownership claim in the licenses; they now are actively interfering in Rapaport's ability to sell and/or lease the licenses.

48.    On October 19, 2012, for example, Menachem Ash, Senior Vice President of Legal at IDT, both an attorney and business advisor to IDT and the Jonases, called Doug Lockie, an engineer working with Rapaport on the SH portfolio. Lockie is the president of Endgate Associates (together with its affiliated entities, "Endgate"), which is one of only a handful of companies that services the type of licenses at issue in this dispute. During that call, Ash told Lockie that the SH portfolio was "stolen property" and that Lockie would be wrapped up in litigation if he continued to work with Rapaport. There is no basis in fact or law for Ash's assertion that the SH portfolio is "stolen property"; his phone call to Lockie was nothing more than an intimidation tactic aimed at convincing Rapaport to relinquish control of the licenses rightfully owned by SH.

-16-

49.     Four days later, on October 23, 2012, Thomas Nagle, Senior Litigation
Counsel for IDT, sent Lockie a letter in which Nagle purported to be "formally notifying" Lockie
and Endgate about an "active dispute regarding the ownership" of the SH portfolio. In his letter,
Nagle stated that IDT intends to "pursue any and all legal remedies to protect its rights with
respect to the disputed licenses."

50.     Nagle's assertion of an "active dispute" with respect to the licenses is
false; none of the defendants had ever initiated a legal action claiming that IDT or its affiliated
entities owns any portion of the SH portfolio. Defendants' threat to initiate legal proceedings
against Lockie or Endgate was solely designed to inhibit Rapaport's ability to continue working
on maximizing the value of the SH portfolio. Beyond the fact that there is no question that SH
owns the SH portfolio, there also is no conceivable basis upon which IDT could pursue claims
against Lockie or Endgate simply by virtue of their working with Rapaport. Neither Lockie nor
Endgate claims to have any ownership interest in the SH portfolio. Ash's phone call and Nagle's
letter represent nothing more than intimidation tactics designed to interfere with Rapaport's
ability to earn a living from the SH portfolio – an investment in which he has put substantial
amounts of his own money at risk.

51.     In short, defendants have manufactured a dispute over who owns the SH
portfolio without any factual or legal basis for doing so. They have shown that they are prepared
to deploy their threats against any person or entity that chooses to do business with Rapaport or
SH. Indeed, days after Rapaport was fired, Howard Jonas dispatched his son Davidi to wait
outside Rapaport's house for an entire day in an effort to intimidate Rapaport into agreeing to
accept less than his contractual share of the revenues from the Spectrum portfolio. When
Rapaport arrived home, Davidi Jonas told him that IDT would "fight dirty" if he did not accept

-17-

IDT's demands, and that Shmuel Jonas was "not a rational person" who "victimizes people all the time."

52.     In light of defendants' clear indications that they will resort to threats and intimidation to thwart Rapaport's efforts to make a living, Plaintiffs have no choice but to seek a declaratory judgment that SH is the rightful owner of these licenses in order to prevent defendants from continuing to cast a cloud over SH's ownership.

## COUNT I
## BREACH OF FIDUCIARY DUTY
### (against Spectrum, IDT, IDT Spectrum, Inc., Howard Jonas and Shmuel Jonas)

53.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 52, above.

54.     A fiduciary relationship exists between plaintiffs and defendants Spectrum, IDT, IDT Spectrum, Inc., Howard Jonas and Shmuel Jonas by reason of: the Agreement Rapaport entered into with Spectrum; plaintiffs' contractual entitlement to receive an agreed portion of the revenues generated under the Agreement; and the control over those revenues exercised by defendants.

55.     Since August 11, 2012, defendants have breached their fiduciary duties to plaintiffs by, *inter alia*, failing to properly manage the Spectrum portfolio and allowing its value to erode to the point where it appears that all licensing and sales activity has ceased.  They have also failed to pay any of the amounts due to plaintiffs under the October 2010 profit sharing agreement since Rapaport was fired from IDT in July 2012.

56.     As a direct and proximate result of defendants' breaches of their fiduciary duties, plaintiffs have suffered substantial damages because of the mismanagement of the

Spectrum portfolio. The damages suffered by plaintiffs are in an amount no less than $5,000,000, plus interest.

**COUNT II**
**ACCOUNTING**
**(against IDT, IDT Spectrum, Inc., Howard Jonas and Shmuel Jonas)**

57.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56, above.

58.     A fiduciary relationship exists between plaintiffs and defendants Spectrum, IDT, IDT Spectrum, Inc., Howard Jonas and Shmuel Jonas by reason of: the Agreement Rapaport entered into with Spectrum; plaintiffs' contractual entitlement to receive an agreed portion of the revenues generated under the Agreement; and the control over those revenues exercised by defendants.

59.     Plaintiffs have an interest in the revenues received from the sale and/or lease of the licenses subject to the Agreement.

60.     Defendants have breached the fiduciary duties they owe to plaintiffs by, *inter alia*, refusing to disburse funds that are owed to plaintiffs pursuant to the terms of the Agreement.

61.     Despite the settlement that resolved plaintiffs' claims for their share of the revenues generated from sales and/or leasing activity relating to the Spectrum portfolio, plaintiffs have no way of knowing what revenues, if any, have been generated since August 11, 2012. Given defendants' conduct to date, plaintiffs will continue to be shut out from the day to day business of IDT Spectrum and from any direct information about the finances and performance of the Spectrum portfolio.

13851493

62.    Because of the control defendants exercise over revenues received from the sale and/or lease of licenses covered by the Agreement, plaintiffs are unable to determine the exact amount of those revenues and the corresponding share of those revenues to which they are entitled.

63.    Plaintiffs therefore are entitled to an accounting of all revenues that defendants have received since August 11, 2012 as a result of the sale and/or lease of the licenses listed in the schedules to the Agreement.

**COUNT III**
**CONSTRUCTIVE TRUST**
**(against IDT, IDT Spectrum, Inc., Howard Jonas and Shmuel Jonas)**

64.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 63, above.

65.    A fiduciary relationship exists between plaintiffs and each of the defendants by reason of: the Agreement Rapaport entered into with Spectrum; plaintiffs' contractual entitlement to receive an agreed portion of the revenues generated under the Agreement; and the control over those revenues exercised by defendants.

66.    As reflected by the Agreement and the parties' course of conduct, defendants promised to plaintiffs both that they would seek to maximize the value of the Spectrum portfolio by selling and/or leasing the licenses constituting the portfolio to third parties and that they would give plaintiffs their contractual share of the proceeds of any such sales or leases to plaintiffs.

67.    In reliance on these promises, plaintiffs transferred both control over the Spectrum portfolio and control over the proceeds from any sales and/or leasing activity to defendants. Plaintiff Rapaport also transferred a substantial amount of his own wealth to IDT

-20-

and third parties in order to renew and develop the licenses comprising the Spectrum portfolio in reliance upon defendants' promises to maximize the value of the portfolio.

68.     Defendants have breached their promises to plaintiffs and unjustly enriched themselves by, *inter alia*, failing to properly manage the Spectrum portfolio such that its value has eroded since Rapaport's termination by IDT.

69.     Because defendants are failing to properly manage the Spectrum portfolio, or even manage it at all, plaintiffs are being unjustly deprived of the ability to seek a return on their substantial investment in the Spectrum portfolio.

70.     Under these circumstances, equity and good conscience demand that a constructive trust be imposed upon the Spectrum portfolio in order to prevent defendants from continuing to unjustly enrich themselves at plaintiffs' expense.

## COUNT IV
## DECLARATORY JUDGMENT
### (against all Defendants)

71.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70, above.

72.     As described above, defendants have manufactured a dispute concerning the ownership of the Level 3 portfolio in order to intimidate Rapaport into relinquishing SH's ownership of the Level 3 portfolio. Specifically, IDT has claimed that it is entitled to "buy back" the licenses from SH and its lawyers have falsely stated to third parties that the Level 3 portfolio is "stolen property." Defendants have coupled these false claims with threats of legal action against one or more persons doing business with plaintiffs.

73.     Because defendants contend that IDT and/or Spectrum is the true owner of the Level 3 portfolio -- despite the fact that all of the licenses are held in SH's name and

defendants had full knowledge of, and blessed, the transaction by which SH obtained these licenses -- there is now a substantial and actual controversy concerning the ownership of the Level 3 portfolio.

74.    Plaintiffs are prejudiced by this manufactured ownership dispute and conflicting claim of right. SH will be unable to sell or lease the licenses in the Level 3 portfolio if third party purchasers and lessees believe that defendants will later assert an ownership interest in the licenses. Persons and entities that do business with plaintiffs will stop doing so if threatened with legal action that has no basis in law or fact. In short, these licenses are unmarketable while the cloud created by defendants' actions looms over the Level 3 portfolio. Rapaport has invested more than $300,000 of his own money to purchase, renew and develop the SH portfolio. He is at risk of losing it all if defendants continue to dispute his rightful ownership.

75.    Accordingly, plaintiffs seek a declaration that SH is the sole, rightful owner of the Level 3 portfolio.

**COUNT V**
**DECLARATORY JUDGMENT**
**(against all Defendants)**

76.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 75, above.

77.    As described above, defendants have manufactured a dispute concerning the ownership of the LICT portfolio in order to intimidate Rapaport into relinquishing SH's ownership of the LICT portfolio. Specifically, IDT has claimed that it is entitled to "buy back" the licenses from SH and its lawyers have falsely stated to third parties that the LICT portfolio is

"stolen property." Defendants have coupled these false claims with threats of legal action against one or more persons doing business with plaintiffs.

78.    Because defendants contend that IDT and/or Spectrum is the true owner of the LICT portfolio -- despite the fact that all of the licenses are held in SH's name and defendants had full knowledge of, and blessed, the transaction by which SH obtained these licenses -- there is now a substantial and actual controversy concerning the ownership of the LICT portfolio.

79.    Plaintiffs are prejudiced by this manufactured ownership dispute and conflicting claim of right. SH will be unable to sell or lease the licenses in the LICT portfolio if third party purchasers and lessees believe that defendants will later assert an ownership interest in the licenses. Persons and entities that do business with plaintiffs will stop doing so if threatened with legal action that has no basis in law or fact. In short, these licenses are unmarketable while the cloud created by defendants' actions looms over the Level 3 portfolio. Rapaport has invested more than $300,000 of his own money to purchase, renew and develop the SH portfolio. He is at risk of losing it all if defendants continue to dispute his rightful ownership.

80.    Accordingly, plaintiffs seek a declaration that SH is the sole, rightful owner of the LICT portfolio.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**
**(against all Defendants)**

81.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80, above.

13851493

82.    Plaintiffs have business relationships with a number of third parties who may have interest in purchasing licenses in the SH portfolio.

83.    Defendants are aware of these relationships and have intentionally interfered with them.

84.    Defendants have acted solely out of malice and have used improper means in the course of interfering in plaintiffs' business relationships.

85.    As a result of defendants' tortious interference with plaintiffs' prospective economic relations, plaintiffs have suffered damages in an amount no less than $20 million.

86.    Further, because of the egregious, improper and illegal conduct in which defendants have engaged, including their representing to an engineer offering consulting services to Rapaport that the SH portfolio is "stolen property" and threatening to initiate baseless legal proceedings against third parties in order to inhibit Rapaport's ability to develop and market the SH portfolio, plaintiffs seek punitive damages in an amount no less than $20,000,000.

**WHEREFORE**, Plaintiffs Michael Rapaport and SH demand Judgment as follows:

A.      On Count I, a money judgment against Spectrum, IDT, IDT Holdings, Inc., Howard Jonas and Shmuel Jonas for compensatory damages in an amount no less than $5,000,000, plus interest;

B.      On Count II, an accounting of all revenues that Spectrum, IDT, IDT Holdings, Inc., Howard Jonas and Shmuel Jonas have received as a result of the sale and/or lease of the licenses listed in the schedules to the Agreement.

C.      On Count III, the imposition of a constructive trust over the Spectrum portfolio in order to ensure both its proper management and that Spectrum, IDT, IDT Holdings, Inc., Howard Jonas, and Shmuel Jonas cannot continue to unjustly enrich themselves at plaintiffs' expense.

D.      On Count IV, a declaratory judgment against Spectrum, IDT, IDT Holdings, Inc., Howard Jonas, Shmuel Jonas, and Menachem Ash that SH is the sole, rightful owner of the Level 3 portfolio.

E.      On Count V, a declaratory judgment against Spectrum, IDT, IDT Holdings, Inc., Howard Jonas, Shmuel Jonas, and Menachem Ash that SH is the sole, rightful owner of the LICT portfolio.

F.      On Count VI, a money judgment against Spectrum, IDT, IDT Holdings, Inc., Howard Jonas, Shmuel Jonas, and Menachem Ash for compensatory damages in an amount no less than $20,000,000, plus interest, and punitive damages in an amount no less than $20,000,000.

-25-

L.     All attorney's fees and costs incurred by plaintiffs in connection with this action.

M.     Such other and further relief as to this Court seems just and proper.

Dated:  December 30, 2012

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP

By:__/s/ Jeffrey C. Berman____
     Turner P. Smith
     Steven J. Reisman
     Jeffrey C. Berman

101 Park Avenue
New York, New York  10178
(212) 696-6000

*Attorneys for Plaintiffs Michael Rapaport and
Spectrum Holdings Technologies, LLC*

13851493

# EXHIBIT A

## AGREEMENT

This Agreement, dated as of October 13. 2010 (this "Agreement"). is made and entered into by and among Michael Rapaport, an individual residing at 227 Mosher Avenue, Woodmere, NY, 11598 ("Rapaport") and IDT Spectrum, LLC ("Spectrum"), a Delaware limited liability company ("Spectrum"). Each of Rapaport and Spectrum is also referred to herein as a "Party", and collectively as the "Parties".

## RECITALS

WHEREAS, Spectrum owns certain spectrum licenses issued by the Federal Communications Commission ("FCC") governing the utilization of portions of the 39GHz segment of the wireless spectrum in certain geographic areas of the United States, including those licenses listed on Schedule A annexed hereof (the "Schedule A Licenses"). Schedule B annexed hereto (the "Schedule B Licenses") and Schedule C annexed hereto (the "Schedule C Licenses" and together with the Schedule A Licenses and the Schedule B Licenses, the "Portfolio"):

WHEREAS, Rapaport is an employee of IDT Corporation, an affiliate of Spectrum ("IDT"), whose current duties include management of the Portfolio; and

WHEREAS, Spectrum and Rapaport have come to an understanding regarding certain of the licenses in the Portfolio and desire to set forth their agreements related thereto.

NOW THEREFORE, in consideration of the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## AGREEMENT

1.  <u>Payments and Responsibilities</u>.  The Parties agree to the following with respect to the licenses in the Portfolio:

A.    <u>Schedule A Licenses</u>.  (i) Spectrum agrees that it will, no later than October 18, 2010, pay or cause to be paid the renewal payment in the amount of $560 per license for each of the Schedule A Licenses, and that, it will pursue the Build-Out (subject to the limitation set forth in clause (ii) below) of the areas covered by each Schedule A License. As used herein, the term "Build-Out" shall mean the development necessary to comply with the FCC's "substantial service" requirements applicable to the relevant licenses by the applicable deadline therefor.

(ii)    Spectrum shall utilize its own discretion in determining the nature of the Build-Out with respect to the Schedule A Licenses, the amount to be spent in connection therewith and whether to suspend such efforts at any time following the date hereof. It is expressly understood and agreed that neither Spectrum nor any of its affiliates shall be under any

obligation to expend any minimum sum to be considered in compliance with its obligations under this provision and shall have no liability for failing to complete the Build-Out.

(iii)    Rapaport agrees that he will, (1) no later than October 15, 2010, fund ten percent (10%) of the cost of the renewal payments of the Schedule A Licenses, and (2) within five (5) business days' following request from Spectrum, fund ten percent (10%) of the cost related to the development of the Schedule A Licenses, provided that Spectrum shall only request funding for costs previously incurred or anticipated to be incurred within sixty (60) days following the request therefor, and provided further, that Rapaport shall only fund to the extent that Spectrum is funding the remaining ninety percent (90%) of such development costs. In the event that Rapaport fails to fund any of his obligations under this provision, his Interest (as defined below) in the Schedule A Licenses shall be proportionately reduced (based on the total renewal fees and development costs incurred with respect to the Schedule A Licenses and the respective amounts thereof funded by Spectrum (and its affiliates) and Rapaport.

(iv)    In exchange for the payment referenced in the prior provision, Rapaport shall receive a twelve and one-half percent (12.5%) Interest in the Schedule A Licenses. As used herein, the term "Interest" shall mean the right to receive a portion of the proceeds (after deducting any commissions, expenses of the sale or lease or other expenses directly attributable to the sale or lease process, but not including any overhead, allocated or otherwise) from any sale or lease (other than leases in effect on the date hereof) of the covered licenses. In addition, it is anticipated that there will be deducted from the proceeds of leases (prior to distribution of the net amount) any operating expenses related to Spectrum or the Portfolio related to such leases that are in addition to the current level of such expenses (and any funding necessary for such expenses will be in proportion to the funding of the renewal payment for the related license(s)), provided that, if such expenses are to be deducted, they shall only be incurred upon agreement of Spectrum and Rapaport. Subject to the provisions of Section 2B below, Spectrum shall distribute such sale and lease proceeds to Rapaport within thirty (30) days of receipt thereof.

(v)    In the event that any of the Schedule A Licenses are sold by Spectrum and at the time of such sale, Rapaport was actively involved in the management of the Portfolio as a full-time employee of IDT or its affiliates, then in addition to anything he may be entitled to in respect of his Interest in such sold Schedule A License(s), Rapaport shall be entitled to receive a sales commission of five percent (5%) of the sale price. Such commission shall be deducted from the proceeds in calculating rights in respect of any Interest. In the event that Rapaport's employment by any of IDT's affiliates is terminated, and at the time of such termination, Rapaport is involved in substantive discussions regarding a sale of any Schedule A Licenses on behalf of Spectrum, provided that Rapaport provides prompt notice of such discussions to Spectrum along with all relevant information related thereto, then, if a sale to such purchaser is consummated within one hundred eighty (180) days following the date of termination of employment, then Rapaport shall be entitled to receive the sales commission provided for in this provision upon consummation of such sale.

B.    Schedule B Licenses. (i) Spectrum agrees that it will, no later than October 18, 2010, pay or cause to be paid the renewal payment in the amount of $560 per license for each

2

of the Schedule B Licenses, and that it will pursue the Build-Out (subject to the limitation set forth in clause (ii) below) of each of the areas covered by each Schedule B License.

(ii)     Notwithstanding the foregoing, Spectrum's commitment with respect to the Schedule B Licenses, shall be an aggregate of Two Hundred Thousand Dollars ($200,000), for license renewal payments and in the Build-Out, it being understood that neither Spectrum nor any of its affiliates shall be under any obligation to expend additional sums in fulfillment of its obligations hereunder in respect thereof and shall have no liability for failing to complete the Build-Out.

(iii)    Rapaport agrees that he will, (1) no later than October 15, 2010, fund forty-nine percent (49%) of the cost of the renewal payments of all Schedule B Licenses, and (2) within five (5) business days' following request from Spectrum , fund forty-nine percent (49%) of the cost related to the development of the Schedule B Licenses, provided that Spectrum shall only request funding for costs previously incurred or anticipated to be incurred within sixty (60) days following the request therefor and provided further, that Rapaport shall only fund to the extent that Spectrum is funding the remaining fifty-one percent (51%) of such development costs.  In the event that Rapaport fails to fund any of his obligations under this provision, his Interest in the Schedule B Licenses shall be proportionately reduced (based on the total renewal fees and development costs incurred with respect to the Schedule B Licenses and the respective amounts thereof funded by Spectrum (and its affiliates) and Rapaport.

(iv)     In exchange for the payment referenced in the prior provision, Rapaport shall receive a forty-nine percent (49%) Interest in the Schedule B Licenses.

2.  Ownership; Nature of the Interests.

A.  Notwithstanding anything else herein to the contrary, Spectrum shall remain the owner of all licenses in the Portfolio and shall be solely entitled to make any and all decisions related thereto (including, without limitation, on the sale or lease thereof), it being agreed that any Interest therein shall be passive and not entitle Rapaport to exert any power or indicia or ownership in respect thereof.

B.  Without limitation to the foregoing, nothing herein shall restrict Spectrum's right, after consultation with Rapaport, to retain proceeds from sales and leases of licenses in the Portfolio in order to fund the Build-Out of the remaining licenses listed on the same Schedule as those sold or leased, provided that any such proceeds so retained shall be applied in proportion to the Parties' respective funding obligations with respect to the licenses to be built out.

C.  In no event shall the Interests be deemed to constitute a transfer of any interest in a license or otherwise violate the rules and regulations of the FCC related thereto, or require any filing or public notice.  In the event that any such obligation shall be asserted, the Parties will negotiate in good faith to restructure the rights and obligations hereunder to remove any such asserted obligation, including unwinding the effects of this Agreement.

3

3. <u>Other Licenses</u>. The parties acknowledge and agree that Spectrum will not be making any renewal payments with respect to the Schedule C Licenses and accordingly, such licenses will expire in accordance with their terms. Rapaport shall not be entitled to any interest in any of the Schedule C Licenses and shall not pursue any purchase or renewal thereof.

4. <u>Employment Matters</u>.

A. Nothing herein shall in any manner diminish Rapaport's duties and obligations to IDT as an employee of IDT or IDT's rights with respect to (i) the licenses in the Portfolio, (ii) intellectual property developed by Rapaport as an employee of IDT, (iii) other matters related to Rapaport's employment and service to Spectrum and its affiliates in any capacity.

B. Nothing herein shall provide Rapaport with any right to continued employment by IDT in any manner or to continue to provide services to, or receive remuneration from, IDT or any of its subsidiaries or affiliates, provided that, except as otherwise provided herein, his rights to any Interest that shall have been acquired shall not be affected by any cessation of such employment.

C. In consideration of the provisions hereof, Rapaport agrees to give Spectrum or its affiliates no less than sixty (60) days' prior written notice of any retirement or other termination of his employment with IDT or its affiliates. Any such termination by Rapaport without provision of such notice shall result in the forfeiture by Rapaport of all Interests in the Portfolio.

5. <u>Transfers</u>. Rapaport shall not transfer any of the Interests without the prior written consent of IDT, which consent shall not be unreasonably withheld with respect to transfers to affiliates and for estate and tax planning purposes.

6. <u>Plan Budget</u>. As part of his duties to IDT, Rapaport shall prepare a Build-Out plan and budget meeting Spectrum's reasonable conditions therefor.

7. <u>Miscellaneous</u>.

A. <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

B. <u>Enforceability</u>. If any provision, which is contained in this Agreement, for any reason, should be held to be invalid or unenforceable in any respect under the laws of any State of the United States or any other jurisdiction, such invalidity or unenforceability shall not affect any other provision of this Agreement. Instead, this Agreement shall be construed as if such invalid or unenforceable provisions had not been contained herein.

C. <u>Notices</u>. Any notice or other communication required or permitted hereunder ("Notice") must be in writing and sent by either (i) registered or certified mail, postage prepaid, return receipt requested, (ii) overnight delivery with confirmation of delivery, or (iii) confirmed facsimile transmission, in each case addressed as follows:

To: Michael Rapaport:          227 Mosher Avenue

4

Woodmere, NY, 11598
Facsimile: 973.438.1874

To: Spectrum.:                550 Broad Street
                             Newark, New Jersey 07102
                             Attn: Chief Executive Officer

                             Copy to:

                             IDT Corporation Legal Department
                             520 Broad Street
                             Newark, New Jersey 07102
                             Attention: General Counsel

or in each case to such other address and facsimile number as shall have last been furnished by
like Notice. If mailing by registered or certified mail is impossible due to an absence of postal
service, and if the other methods of sending Notice set forth in this Section 7(C) are not
otherwise available, Notice shall be in writing and personally delivered to the aforesaid
addresses. Each Notice or communication shall be deemed to have been given as of the date so
mailed or delivered, as the case may be: provided, however, that any Notice sent by facsimile
shall be deemed to have been given as of the date sent by facsimile.

    D.      Successors and Assigns. Except as set forth herein, this Agreement, and all
rights and powers granted hereby, will bind and inure to the benefit of the parties hereto and their
respective successors and assigns, but neither this Agreement nor any of the rights, interests or
obligations hereunder shall be assigned by any Party without the prior written consent of the
other Parties.

    E.      Governing Law; Disputes. This Agreement shall in all respects be construed,
governed, applied and enforced with the laws of the State of New Jersey without giving effect to
the principles of conflicts of laws. All Parties hereby consent to and irrevocably submit to
personal jurisdiction by the State and Federal Courts sitting in Essex County, New Jersey in any
action or proceeding, irrevocably waive trial by jury and personal service of any and all process
and other documents and specifically consent that in any such action or proceeding, any service
of process may, without limitation, be effectuated by certified mail, return receipt requested.

    F.      Further Assurances. The Parties agree to execute any and all such other and
further instruments and documents, and to take any and all such further actions, which are
reasonably required to effectuate this Agreement and the intents and purposes hereof.

    G.      Binding Agreement. This Agreement shall be binding upon and inure to the
benefit of the Parties hereto and their heirs, executors, administrators, personal representatives,
successors and assigns.

    H.      Waiver. Except as otherwise expressly provided herein, no waiver of any
covenant, condition, or provision of this Agreement shall be deemed to have been made unless

5

expressly set forth in writing and signed by the Party against whom such waiver is charged; and, (i) the failure of any Party to insist in any one or more cases upon the performance of any of the provisions, covenants, or conditions of this Agreement or to exercise any option herein contained, shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants, or conditions; (ii) the acceptance of performance of anything required by this Agreement to be performed with knowledge of the breach or failure of a covenant, condition, or provision hereof shall not be deemed a waiver of such breach or failure; and, (iii) no waiver by any Party of one breach by another Party shall be construed as a waiver with respect to any other or subsequent breach.

    I.      <u>Counterparts; Fax or PDF Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute the same Agreement. Any signature page of any such counterpart, or any electronic facsimile thereof, may be attached or appended to any other counterpart to complete a fully executed counterpart of this Agreement, and any PDF, telecopy or other facsimile transmission of any signature shall be deemed an original and shall bind such party.

    J.      <u>Entire Agreement</u>. The Parties have not made any representations, warranties, or covenants with respect to the subject matter hereof, orally or in writing, which are not expressly set forth herein, and this n Agreement, together with any instruments or other agreements executed simultaneously herewith, constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the Parties with respect to the subject matter hereof are merged in this Agreement, which alone fully and completely expresses their agreement. This Agreement may not be changed, modified, extended, terminated, or discharged orally, but only by an agreement in writing, which is signed by all of the Parties to this Agreement.

[Remainder of page has been intentionally left blank]

6

UEC 14 2010 3:43PM    IDT CORPORATION              (212) 221-5343              P.1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.


IDT SPECTRUM, LLC

By:    _____

Name: Joyce Mason

Title: Secretary


MICHAEL RAPAPORT

_____

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

IDT SPECTRUM, LLC

By: _____

Name: Joyce Mason
Title:

MICHAEL RAPAPORT

7

SCHEDULE A

| Call Sign | Economic Area | Channel | Service Area | State(s) |
|-----------|---------------|---------|--------------|----------|
| WPQU625 | BEA001 | 8 | Bangor | ME |
| WPQU810 | BEA002 | 11 | Portland | ME |
| WPQU674 | BEA003 | 9 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU752 | BEA003 | 10 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU811 | BEA003 | 11 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU238 | BEA004 | 2 | Burlington | VT-NY |
| WPQU367 | BEA005 | 4 | Albany-Schenectady-Troy | NY |
| WPQU239 | BEA006 | 2 | Syracuse | NY-PA |
| WPQU628 | BEA006 | 8 | Syracuse | NY-PA |
| WPQU294 | BEA007 | 3 | Rochester | NY-PA |
| WPQU813 | BEA008 | 11 | Buffalo-Niagara Falls | NY-PA |
| WPQU814 | BEA009 | 11 | State College | PA |
| WPQU240 | BEA010 | 2 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU296 | BEA010 | 3 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU434 | BEA010 | 5 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU504 | BEA010 | 6 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU557 | BEA010 | 7 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU677 | BEA010 | 9 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU754 | BEA010 | 10 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU898 | BEA011 | 12 | Harrisburg-Lebanon-Carlisle | PA |
| WPQU297 | BEA012 | 3 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU755 | BEA012 | 10 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU298 | BEA013 | 3 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU436 | BEA013 | 5 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU559 | BEA013 | 7 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU900 | BEA014 | 12 | Salisbury | MD-DE-VA |
| WPQU299 | BEA015 | 3 | Richmond-Petersburg | VA |
| WPQT973 | BEA016 | 1 | Staunton | VA-WV |
| WPQT974 | BEA017 | 1 | Roanoke | VA-NC-WV |
| WPQU241 | BEA018 | 2 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU631 | BEA019 | 8 | Raleigh-Durham-Chapel Hill | NC |
| WPQV217 | BEA020 | 14 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU242 | BEA021 | 2 | Greenville | NC |
| WPQU373 | BEA022 | 4 | Fayetteville | NC |
| WPQU374 | BEA023 | 4 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQU303 | BEA024 | 3 | Columbia | SC |
| WPQU375 | BEA025 | 4 | Wilmington | NC-SC |
| WPQU904 | BEA026 | 12 | Charleston-North Charleston | SC |
| WPQU438 | BEA027 | 5 | Augusta-Aiken | GA-SC |
| WPQU304 | BEA028 | 3 | Savannah | GA-SC |
| WPQU633 | BEA029 | 8 | Jacksonville | FL-GA |
| WPQU634 | BEA030 | 8 | Orlando | FL |
| WPQU244 | BEA031 | 2 | Miami-Fort Lauderdale | FL |
| WPQV225 | BEA031 | 14 | Miami-Fort Lauderdale | FL |
| WPQU245 | BEA032 | 2 | Fort Myers-Cape Coral | FL |
| WPQU246 | BEA033 | 2 | Sarasota-Bradenton | FL |
| WPQV226 | BEA034 | 14 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU377 | BEA035 | 4 | Tallahassee | FL-GA |
| WPQU309 | BEA036 | 3 | Dothan | AL-FL-GA |
| WPQU689 | BEA037 | 9 | Albany | GA |

| WPQV227 | BEA038 | 14 | Macon | GA |
| WPQU511 | BEA039 | 6 | Columbus | GA-AL |
| WPQU441 | BEA040 | 5 | Atlanta | GA-AL-NC |
| WPQU690 | BEA040 | 9 | Atlanta | GA-AL-NC |
| WPQU691 | BEA041 | 9 | Greenville-Spartanburg-Anderson | SC-NC |
| WPQU312 | BEA042 | 3 | Asheville | NC |
| WPQU250 | BEA043 | 2 | Chattanooga | TN-GA |
| WPQT982 | BEA044 | 1 | Knoxville | TN |
| WPQU251 | BEA045 | 2 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQU512 | BEA046 | 6 | Hickory-Morganton | NC-TN |
| WPQU252 | BEA047 | 2 | Lexington | KY-TN-VA-WV |
| WPQU513 | BEA048 | 6 | Charleston | WV-KY-OH |
| WPQU769 | BEA048 | 10 | Charleston | WV-KY-OH |
| WPQU570 | BEA049 | 7 | Cincinnati-Hamilton | OH-KY-IN |
| WPQT984 | BEA050 | 1 | Dayton-Springfield | OH |
| WPQT985 | BEA051 | 1 | Columbus | OH |
| WPQU254 | BEA052 | 2 | Wheeling | WV-OH |
| WPQU573 | BEA053 | 7 | Pittsburgh | PA-WV |
| WPQT986 | BEA054 | 1 | Erie | PA |
| WPQU574 | BEA055 | 7 | Cleveland-Akron | OH-PA |
| WPQU837 | BEA055 | 11 | Cleveland-Akron | OH-PA |
| WPQU700 | BEA056 | 9 | Toledo | OH |
| WPQU575 | BEA057 | 7 | Detroit-Ann Arbor-Flint | MI |
| WPQU838 | BEA057 | 11 | Detroit-Ann Arbor-Flint | MI |
| WPQU702 | BEA058 | 9 | Northern Michigan | MI |
| WPQU318 | BEA059 | 3 | Green Bay | WI-MI |
| WPQU387 | BEA060 | 4 | Appleton-Oshkosh-Neenah | WI |
| WPQU579 | BEA061 | 7 | Traverse City | MI |
| WPQU320 | BEA062 | 3 | Grand Rapids-Muskegon-Holland | MI |
| WPQU920 | BEA062 | 12 | Grand Rapids-Muskegon-Holland | MI |
| WPQU842 | BEA063 | 11 | Milwaukee-Racine | WI |
| WPQU322 | BEA064 | 3 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU451 | BEA064 | 5 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU517 | BEA064 | 6 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQT989 | BEA065 | 1 | Elkhart-Goshen | IN-MI |
| WPQU257 | BEA065 | 2 | Elkhart-Goshen | IN-MI |
| WPQU390 | BEA065 | 4 | Elkhart-Goshen | IN-MI |
| WPQU518 | BEA065 | 6 | Elkhart-Goshen | IN-MI |
| WPQU452 | BEA066 | 5 | Fort Wayne | IN |
| WPQT990 | BEA067 | 1 | Indianapolis | IN-IL |
| WPQU582 | BEA067 | 7 | Indianapolis | IN-IL |
| WPQU324 | BEA068 | 3 | Champaign-Urbana | IL |
| WPQU519 | BEA069 | 6 | Evansville-Henderson | IN-KY-IL |
| WPQT991 | BEA070 | 1 | Louisville | KY-IN |
| WPQU776 | BEA071 | 10 | Nashville | TN-KY |
| WPQU521 | BEA072 | 6 | Paducah | KY-IL |
| WPQU585 | BEA073 | 7 | Memphis | TN-AR-MS-KY |
| WPQV244 | BEA074 | 14 | Huntsville | AL-TN |
| WPQU642 | BEA075 | 8 | Tupelo | MS-AL-TN |
| WPQV246 | BEA076 | 14 | Greenville | MS |
| WPQU457 | BEA077 | 5 | Jackson | MS-AL-LA |
| WPQU523 | BEA078 | 6 | Birmingham | AL |

| | | | | |
|---|---|---|---|---|
| WPQV248 | BEA079 | 14 | Montgomery | AL |
| WPQU524 | BEA080 | 6 | Mobile | AL |
| WPQU932 | BEA081 | 12 | Pensacola | FL |
| WPQU849 | BEA082 | 11 | Biloxi-Gulfport-Pascagoula | MS |
| WPQV250 | BEA083 | 14 | New Orleans | LA-MS |
| WPQV251 | BEA084 | 14 | Baton Rouge | LA-MS |
| WPQU399 | BEA085 | 4 | Lafayette | LA |
| WPQU709 | BEA086 | 9 | Lake Charles | LA |
| WPQU460 | BEA087 | 5 | Beaumont-Port Arthur | TX |
| WPQV254 | BEA088 | 14 | Shreveport-Bossier City | LA-AR |
| WPQT999 | BEA089 | 1 | Monroe | LA |
| WPQU333 | BEA090 | 3 | Little Rock-North Little Rock | AR |
| WPQU526 | BEA090 | 6 | Little Rock-North Little Rock | AR |
| WPQV256 | BEA091 | 14 | Fort Smith | AR-OK |
| WPQU266 | BEA092 | 2 | Fayetteville-Springdale-Rogers | AR-MO-OK |
| WPQV267 | BEA093 | 2 | Joplin | MO-KS-OK |
| WPQU201 | BEA094 | 1 | Springfield | MO |
| WPQU268 | BEA095 | 2 | Jonesboro | AR-MO |
| WPQU591 | BEA096 | 7 | St. Louis | MO-IL |
| WPQU715 | BEA097 | 9 | Springfield | IL-MO |
| WPQV262 | BEA098 | 14 | Columbia | MO |
| WPQU593 | BEA099 | 7 | Kansas City | MO-KS |
| WPQV263 | BEA100 | 14 | Des Moines | IA-IL-MO |
| WPQU203 | BEA101 | 1 | Peoria-Pekin | IL |
| WPQU940 | BEA101 | 12 | Peoria-Pekin | IL |
| WPQU471 | BEA102 | 5 | Davenport-Moline-Rock Island | IA-IL |
| WPQU994 | BEA103 | 13 | Cedar Rapids | IA |
| WPQU204 | BEA104 | 1 | Madison | WI-IL-IA |
| WPQU340 | BEA105 | 3 | La Crosse | WI-MN |
| WPQV267 | BEA106 | 14 | Rochester | MN-IA-WI |
| WPQU859 | BEA107 | 11 | Minneapolis-St. Paul | MN-WI-IA |
| WPQU721 | BEA107 | 9 | Minneapolis-St. Paul | MN-WI-IA |
| WPQV269 | BEA108 | 14 | Wausau | WI |
| WPQV270 | BEA109 | 14 | Duluth-Superior | MN-WI |
| WPQV271 | BEA110 | 14 | Grand Forks | ND-MN |
| WPQU532 | BEA111 | 6 | Minot | ND |
| WPQU945 | BEA112 | 12 | Bismarck | ND-MT-SD |
| WPQU208 | BEA113 | 1 | Fargo-Moorhead | ND-MN |
| WPQV273 | BEA114 | 14 | Aberdeen | SD |
| WPQU273 | BEA115 | 2 | Rapid City | SD-MT-NE-ND |
| WPQV274 | BEA116 | 14 | Sioux Falls | SD-IA-MN-NE |
| WPQV274 | BEA117 | 2 | Sioux City | IA-NE-SD |
| WPQU210 | BEA118 | 1 | Omaha | NE-IA-MO |
| WPQU868 | BEA119 | 11 | Lincoln | NE |
| WPQU211 | BEA120 | 1 | Grand Island | NE |
| WPQV276 | BEA121 | 14 | North Platte | NE-CO |
| WPQU212 | BEA122 | 1 | Wichita | KS-OK |
| WPQU213 | BEA123 | 1 | Topeka | KS |
| WPQV277 | BEA124 | 2 | Tulsa | OK-KS |
| WPQU872 | BEA125 | 11 | Oklahoma City | OK |
| WPQV200 | BEA126 | 13 | Western Oklahoma | OK |
| WPQU215 | BEA127 | 1 | Dallas-Fort Worth | TX-AR-OK |

| | | | | |
|---|---|---|---|---|
| WPQU603 | BEA127 | 7 | Dallas-Fort Worth | TX-AR-OK |
| WPQU216 | BEA128 | 1 | Abilene | TX |
| WPQU875 | BEA128 | 11 | Abilene | TX |
| WPQV279 | BEA129 | 14 | San Angelo | TX |
| WPQU280 | BEA130 | 14 | Austin-San Marcos | TX |
| WPQU604 | BEA131 | 7 | Houston-Galveston-Brazoria | TX |
| WPQV281 | BEA131 | 14 | Houston-Galveston-Brazoria | TX |
| WPQV282 | BEA132 | 14 | Corpus Christi | TX |
| WPQV283 | BEA133 | 14 | McAllen-Edinburg-Mission | TX |
| WPQU484 | BEA134 | 5 | San Antonio | TX |
| WPQU732 | BEA134 | 9 | San Antonio | TX |
| WPQV203 | BEA135 | 13 | Odessa-Midland | TX |
| WPQU221 | BEA136 | 1 | Hobbs | NM-TX |
| WPQU353 | BEA137 | 3 | Lubbock | TX |
| WPQU222 | BEA138 | 1 | Amarillo | TX-NM |
| WPQU223 | BEA139 | 1 | Santa Fe | NM |
| WPQU878 | BEA140 | 11 | Pueblo | CO-NM |
| WPQU485 | BEA141 | 5 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU608 | BEA141 | 7 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU735 | BEA141 | 9 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQV286 | BEA142 | 14 | Scottsbluff | NE-WY |
| WPQV287 | BEA143 | 14 | Casper | WY-ID-UT |
| WPQU959 | BEA144 | 12 | Billings | MT-WY |
| WPQV288 | BEA144 | 14 | Billings | MT-WY |
| WPQU546 | BEA145 | 6 | Great Falls | MT-WY |
| WPQJ662 | BEA145 | 8 | Great Falls | MT |
| WPQU798 | BEA145 | 10 | Great Falls | MT |
| WPQU225 | BEA146 | 1 | Missoula | MT |
| WPQU285 | BEA146 | 2 | Missoula | MT |
| WPQU611 | BEA146 | 7 | Missoula | MT |
| WPQV289 | BEA147 | 14 | Spokane | WA-ID |
| WPQU738 | BEA148 | 9 | Idaho Falls | ID-WY |
| WPQU881 | BEA149 | 11 | Twin Falls | ID |
| WPQU227 | BEA150 | 1 | Boise City | ID-OR |
| WPQV207 | BEA151 | 13 | Reno | NV-CA |
| WPQV292 | BEA152 | 14 | Salt Lake City-Ogden | UT-ID |
| WPQU360 | BEA153 | 3 | Las Vegas | NV-AZ-UT |
| WPQV293 | BEA153 | 14 | Las Vegas | NV-AZ-UT |
| WPQV208 | BEA154 | 13 | Flagstaff | AZ-UT |
| WPQU230 | BEA155 | 1 | Farmington | NM-CO |
| WPQU290 | BEA156 | 2 | Albuquerque | NM-AZ |
| WPQU883 | BEA157 | 11 | El Paso | TX-NM |
| WPQU427 | BEA158 | 4 | Phoenix-Mesa | AZ-NM |
| WPQU491 | BEA158 | 5 | Phoenix-Mesa | AZ-NM |
| WPQU743 | BEA158 | 9 | Phoenix-Mesa | AZ-NM |
| WPQU884 | BEA158 | 11 | Phoenix-Mesa | AZ-NM |
| WPQV294 | BEA158 | 14 | Phoenix-Mesa | AZ-NM |
| WPQV295 | BEA159 | 14 | Tucson | AZ |
| WPQU428 | BEA160 | 4 | Los Angeles-Riverside-Orange County | CA-AZ |
| WPQU492 | BEA160 | 5 | Los Angeles-Riverside-Orange County | CA-AZ |
| WPQU744 | BEA160 | 9 | Los Angeles-Riverside-Orange County | CA-AZ |
| WPQU885 | BEA160 | 11 | Los Angeles-Riverside-Orange County | CA-AZ |

| | | | | |
|---|---|---|---|---|
| WPQV210 | BEA160 | 13 | Los Angeles-Riverside-Orange County | CA-AZ |
| WPQU363 | BEA161 | 3 | San Diego | CA |
| WPQV296 | BEA162 | 14 | Fresno | CA |
| WPQU494 | BEA163 | 5 | San Francisco-Oakland-San Jose | CA |
| WPQU620 | BEA163 | 7 | San Francisco-Oakland-San Jose | CA |
| WPQU887 | BEA163 | 11 | San Francisco-Oakland-San Jose | CA |
| WPQV211 | BEA163 | 13 | San Francisco-Oakland-San Jose | CA |
| WPQU231 | BEA164 | 1 | Sacramento-Yolo | CA |
| WPQV297 | BEA165 | 14 | Redding | CA-OR |
| WPQU233 | BEA166 | 1 | Eugene-Springfield | OR-CA |
| WPQU364 | BEA167 | 3 | Portland-Salem | OR-WA |
| WPQU749 | BEA167 | 9 | Portland-Salem | OR-WA |
| WPQU888 | BEA167 | 11 | Portland-Salem | OR-WA |
| WPQU551 | BEA168 | 6 | Pendleton | OR-WA |
| WPQU235 | BEA169 | 1 | Richland-Kennewick-Pasco | WA |
| WPQU365 | BEA170 | 3 | Seattle-Tacoma-Bremerton | WA |
| WPQV301 | BEA170 | 14 | Seattle-Tacoma-Bremerton | WA |
| WPQU293 | BEA171 | 2 | Anchorage | AK |
| WPQU624 | BEA171 | 7 | Anchorage | AK |
| WPQU672 | BEA171 | 8 | Anchorage | AK |
| WPQU892 | BEA171 | 11 | Anchorage | AK |
| WPQU968 | BEA171 | 12 | Anchorage | AK |
| WPQU236 | BEA172 | 1 | Honolulu | HI |
| WPQU500 | BEA174 | 5 | Puerto Rico and the U.S. Virgin Islands | PR-VI |
| WPQU751 | BEA174 | 9 | Puerto Rico and the U.S. Virgin Islands | PR-VI |

SCHEDULE B

| Call Sign | Economic Area | Channel | Service Area | State(s) |
|-----------|---------------|---------|--------------|----------|
| WPQU895 | BEA001 | 12 | Bangor | ME |
| WPQU971 | BEA001 | 13 | Bangor | ME |
| WPQU553 | BEA002 | 7 | Portland | ME |
| WPQU673 | BEA002 | 9 | Portland | ME |
| WPQU432 | BEA003 | 5 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU503 | BEA003 | 6 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU554 | BEA003 | 7 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQU896 | BEA003 | 12 | Boston-Worcester-Lawrence-Lowell-Brockton | MA-NH-RI-VT |
| WPQV216 | BEA004 | 14 | Burlington | VT-NY |
| WPQU627 | BEA005 | 8 | Albany-Schenectady-Troy | NY |
| WPQU812 | BEA005 | 11 | Albany-Schenectady-Troy | NY |
| WPQU753 | BEA006 | 10 | Syracuse | NY-PA |
| WPQU974 | BEA006 | 13 | Syracuse | NY-PA |
| WPQU975 | BEA007 | 13 | Rochester | NY-PA |
| WPQU295 | BEA008 | 3 | Buffalo-Niagara Falls | NY-PA |
| WPQU368 | BEA008 | 4 | Buffalo-Niagara Falls | NY-PA |
| WPQU433 | BEA008 | 5 | Buffalo-Niagara Falls | NY-PA |
| WPQU555 | BEA008 | 7 | Buffalo-Niagara Falls | NY-PA |
| WPQU629 | BEA008 | 8 | Buffalo-Niagara Falls | NY-PA |
| WPQU675 | BEA008 | 9 | Buffalo-Niagara Falls | NY-PA |
| WPQU897 | BEA008 | 12 | Buffalo-Niagara Falls | NY-PA |
| WPQU556 | BEA009 | 7 | State College | PA |
| WPQU676 | BEA009 | 9 | State College | PA |
| WPQU815 | BEA010 | 11 | New York-No. New Jer.-Long Island | NY-NJ-CT-PA-MA-VT |
| WPQU369 | BEA011 | 4 | Harrisburg-Lebanon-Carlisle | PA |
| WPQU435 | BEA012 | 5 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU558 | BEA012 | 7 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU678 | BEA012 | 9 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU816 | BEA012 | 11 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU976 | BEA012 | 13 | Philadelphia-Wilmington-Atl. City | PA-NJ-DE-MD |
| WPQU370 | BEA013 | 4 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU630 | BEA013 | 8 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU679 | BEA013 | 9 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU817 | BEA013 | 11 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU899 | BEA013 | 12 | Washington-Baltimore | DC-MD-VA-WV-PA |
| WPQU818 | BEA014 | 11 | Salisbury | MD-DE-VA |
| WPQT972 | BEA015 | 1 | Richmond-Petersburg | VA |
| WPQU560 | BEA015 | 7 | Richmond-Petersburg | VA |
| WPQU680 | BEA015 | 9 | Richmond-Petersburg | VA |
| WPQU977 | BEA015 | 13 | Richmond-Petersburg | VA |
| WPQU978 | BEA016 | 13 | Staunton | VA-WV |
| WPQU371 | BEA017 | 4 | Roanoke | VA-NC-WV |
| WPQT975 | BEA018 | 1 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU505 | BEA018 | 6 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU561 | BEA018 | 7 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU757 | BEA018 | 10 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU819 | BEA018 | 11 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU901 | BEA018 | 12 | Greensboro-Winston-Salem-High Point | NC-VA |
| WPQU301 | BEA019 | 3 | Raleigh-Durham-Chapel Hill | NC |
| WPQU820 | BEA019 | 11 | Raleigh-Durham-Chapel Hill | NC |
| WPQU902 | BEA019 | 12 | Raleigh-Durham-Chapel Hill | NC |
| WPQT976 | BEA020 | 1 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU302 | BEA020 | 3 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU437 | BEA020 | 5 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU506 | BEA020 | 6 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU979 | BEA020 | 13 | Norfolk-Virginia Beach-Newport News | VA-NC |
| WPQU758 | BEA021 | 10 | Greenville | NC |

| WPQU903 | BEA022 | 12 | Fayetteville | NC |
| WPQT978 | BEA023 | 1 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQU632 | BEA023 | 8 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQU759 | BEA023 | 10 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQU822 | BEA023 | 11 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQV219 | BEA023 | 14 | Charlotte-Gastonia-Rock Hill | NC-SC |
| WPQU683 | BEA024 | 9 | Columbia | SC |
| WPQU823 | BEA024 | 11 | Columbia | SC |
| WPQU760 | BEA025 | 10 | Wilmington | NC-SC |
| WPQU824 | BEA025 | 11 | Wilmington | NC-SC |
| WPQU684 | BEA027 | 9 | Augusta-Aiken | GA-SC |
| WPQV222 | BEA028 | 14 | Savannah | GA-SC |
| WPQT979 | BEA029 | 1 | Jacksonville | FL-GA |
| WPQU243 | BEA029 | 2 | Jacksonville | FL-GA |
| WPQU906 | BEA029 | 12 | Jacksonville | FL-GA |
| WPQV223 | BEA029 | 14 | Jacksonville | FL-GA |
| WPQT980 | BEA030 | 1 | Orlando | FL |
| WPQU305 | BEA030 | 3 | Orlando | FL |
| WPQU761 | BEA030 | 10 | Orlando | FL |
| WPQU825 | BEA030 | 11 | Orlando | FL |
| WPQV224 | BEA030 | 14 | Orlando | FL |
| WPQU306 | BEA031 | 3 | Miami-Fort Lauderdale | FL |
| WPQU376 | BEA031 | 4 | Miami-Fort Lauderdale | FL |
| WPQU439 | BEA031 | 5 | Miami-Fort Lauderdale | FL |
| WPQU507 | BEA031 | 6 | Miami-Fort Lauderdale | FL |
| WPQU563 | BEA031 | 7 | Miami-Fort Lauderdale | FL |
| WPQU685 | BEA031 | 9 | Miami-Fort Lauderdale | FL |
| WPQU762 | BEA031 | 10 | Miami-Fort Lauderdale | FL |
| WPQU826 | BEA031 | 11 | Miami-Fort Lauderdale | FL |
| WPQU686 | BEA032 | 9 | Fort Myers-Cape Coral | FL |
| WPQU763 | BEA032 | 10 | Fort Myers-Cape Coral | FL |
| WPQU508 | BEA033 | 6 | Sarasota-Bradenton | FL |
| WPQT981 | BEA034 | 1 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU247 | BEA034 | 2 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU307 | BEA034 | 3 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU440 | BEA034 | 5 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU509 | BEA034 | 6 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU565 | BEA034 | 7 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU687 | BEA034 | 9 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU764 | BEA034 | 10 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU827 | BEA034 | 11 | Tampa-St. Petersburg-Clearwater | FL |
| WPQU308 | BEA035 | 3 | Tallahassee | FL-GA |
| WPQU510 | BEA036 | 6 | Dothan | AL-FL-GA |
| WPQU566 | BEA036 | 7 | Dothan | AL-FL-GA |
| WPQU310 | BEA037 | 3 | Albany | GA |
| WPQU378 | BEA037 | 4 | Albany | GA |
| WPQU908 | BEA038 | 12 | Macon | GA |
| WPQU980 | BEA038 | 13 | Macon | GA |
| WPQU829 | BEA039 | 11 | Columbus | GA-AL |
| WPQU909 | BEA039 | 12 | Columbus | GA-AL |
| WPQU311 | BEA040 | 3 | Atlanta | GA-AL-NC |
| WPQU568 | BEA040 | 7 | Atlanta | GA-AL-NC |
| WPQU830 | BEA040 | 11 | Atlanta | GA-AL-NC |
| WPQU910 | BEA040 | 12 | Atlanta | GA-AL-NC |
| WPQU982 | BEA040 | 13 | Atlanta | GA-AL-NC |
| WPQU831 | BEA041 | 11 | Greenville-Spartanburg-Anderson | SC-NC |
| WPQU767 | BEA043 | 10 | Chattanooga | TN-GA |

| WPQV229 | BEA044 | 14 | Knoxville | TN |
|---|---|---|---|---|
| WPQU692 | BEA045 | 9 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQV231 | BEA046 | 14 | Hickory-Morganton | NC-TN |
| WPQU768 | BEA047 | 10 | Lexington | KY-TN-VA-WV |
| WPQU912 | BEA047 | 12 | Lexington | KY-TN-VA-WV |
| WPQV232 | BEA047 | 14 | Lexington | KY-TN-VA-WV |
| WPQV233 | BEA048 | 14 | Charleston | WV-KY-OH |
| WPQT983 | BEA049 | 1 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU253 | BEA049 | 2 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU313 | BEA049 | 3 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU444 | BEA049 | 5 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU694 | BEA049 | 9 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU833 | BEA049 | 11 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU913 | BEA049 | 12 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU983 | BEA049 | 13 | Cincinnati-Hamilton | OH-KY-IN |
| WPQV234 | BEA049 | 14 | Cincinnati-Hamilton | OH-KY-IN |
| WPQU571 | BEA050 | 7 | Dayton-Springfield | OH |
| WPQU914 | BEA050 | 12 | Dayton-Springfield | OH |
| WPQU380 | BEA051 | 4 | Columbus | OH |
| WPQU572 | BEA051 | 7 | Columbus | OH |
| WPQU636 | BEA051 | 8 | Columbus | OH |
| WPQU695 | BEA051 | 9 | Columbus | OH |
| WPQU915 | BEA051 | 12 | Columbus | OH |
| WPQU696 | BEA052 | 9 | Wheeling | WV-OH |
| WPQU771 | BEA052 | 10 | Wheeling | WV-OH |
| WPQU381 | BEA053 | 4 | Pittsburgh | PA-WV |
| WPQU445 | BEA053 | 5 | Pittsburgh | PA-WV |
| WPQU514 | BEA053 | 6 | Pittsburgh | PA-WV |
| WPQU697 | BEA053 | 9 | Pittsburgh | PA-WV |
| WPQU835 | BEA053 | 11 | Pittsburgh | PA-WV |
| WPQU916 | BEA053 | 12 | Pittsburgh | PA-WV |
| WPQU836 | BEA054 | 11 | Erie | PA |
| WPQU315 | BEA055 | 3 | Cleveland-Akron | OH-PA |
| WPQU383 | BEA055 | 4 | Cleveland-Akron | OH-PA |
| WPQU446 | BEA055 | 5 | Cleveland-Akron | OH-PA |
| WPQU699 | BEA055 | 9 | Cleveland-Akron | OH-PA |
| WPQU917 | BEA056 | 12 | Toledo | OH |
| WPQU984 | BEA056 | 13 | Toledo | OH |
| WPQU316 | BEA057 | 3 | Detroit-Ann Arbor-Flint | MI |
| WPQU384 | BEA057 | 4 | Detroit-Ann Arbor-Flint | MI |
| WPQU447 | BEA057 | 5 | Detroit-Ann Arbor-Flint | MI |
| WPQU701 | BEA057 | 9 | Detroit-Ann Arbor-Flint | MI |
| WPQU772 | BEA057 | 10 | Detroit-Ann Arbor-Flint | MI |
| WPQU985 | BEA058 | 13 | Northern Michigan | MI |
| WPQU638 | BEA059 | 8 | Green Bay | WI-MI |
| WPQU703 | BEA060 | 9 | Appleton-Oshkosh-Neenah | WI |
| WPQU319 | BEA061 | 3 | Traverse City | MI |
| WPQU321 | BEA063 | 3 | Milwaukee-Racine | WI |
| WPQU389 | BEA063 | 4 | Milwaukee-Racine | WI |
| WPQU450 | BEA063 | 5 | Milwaukee-Racine | WI |
| WPQU516 | BEA063 | 6 | Milwaukee-Racine | WI |
| WPQU580 | BEA063 | 7 | Milwaukee-Racine | WI |
| WPQU704 | BEA063 | 9 | Milwaukee-Racine | WI |
| WPQU581 | BEA064 | 7 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU705 | BEA064 | 9 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU773 | BEA064 | 10 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU843 | BEA064 | 11 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU921 | BEA064 | 12 | Chicago-Gary-Kenosha | IL-IN-WI |

| | | | | |
|---|---|---|---|---|
| WPQV239 | BEA064 | 14 | Chicago-Gary-Kenosha | IL-IN-WI |
| WPQU922 | BEA065 | 12 | Elkhart-Goshen | IN-MI |
| WPQU844 | BEA066 | 11 | Fort Wayne | IN |
| WPQU923 | BEA066 | 12 | Fort Wayne | IN |
| WPQU323 | BEA067 | 3 | Indianapolis | IN-IL |
| WPQU391 | BEA067 | 4 | Indianapolis | IN-IL |
| WPQU453 | BEA067 | 5 | Indianapolis | IN-IL |
| WPQU639 | BEA067 | 8 | Indianapolis | IN-IL |
| WPQU924 | BEA067 | 12 | Indianapolis | IN-IL |
| WPQU707 | BEA068 | 9 | Champaign-Urbana | IL |
| WPQU925 | BEA068 | 12 | Champaign-Urbana | IL |
| WPQU774 | BEA069 | 10 | Evansville-Henderson | IN-KY-IL |
| WPQU845 | BEA069 | 11 | Evansville-Henderson | IN-KY-IL |
| WPQU325 | BEA070 | 3 | Louisville | KY-IN |
| WPQU775 | BEA070 | 10 | Louisville | KY-IN |
| WPQU927 | BEA070 | 12 | Louisville | KY-IN |
| WPQU987 | BEA070 | 13 | Louisville | KY-IN |
| WPQV241 | BEA070 | 14 | Louisville | KY-IN |
| WPQU392 | BEA071 | 4 | Nashville | TN-KY |
| WPQU455 | BEA071 | 5 | Nashville | TN-KY |
| WPQU520 | BEA071 | 6 | Nashville | TN-KY |
| WPQU584 | BEA071 | 7 | Nashville | TN-KY |
| WPQU640 | BEA071 | 8 | Nashville | TN-KY |
| WPQV242 | BEA072 | 14 | Paducah | KY-IL |
| WPQT993 | BEA073 | 1 | Memphis | TN-AR-MS-KY |
| WPQU327 | BEA073 | 3 | Memphis | TN-AR-MS-KY |
| WPQU393 | BEA073 | 4 | Memphis | TN-AR-MS-KY |
| WPQU777 | BEA073 | 10 | Memphis | TN-AR-MS-KY |
| WPQU989 | BEA073 | 13 | Memphis | TN-AR-MS-KY |
| WPQV243 | BEA073 | 14 | Memphis | TN-AR-MS-KY |
| WPQU641 | BEA074 | 8 | Huntsville | AL-TN |
| WPQU929 | BEA075 | 12 | Tupelo | MS-AL-TN |
| WPQU328 | BEA076 | 3 | Greenville | MS |
| WPQU261 | BEA077 | 2 | Jackson | MS-AL-LA |
| WPQU329 | BEA077 | 3 | Jackson | MS-AL-LA |
| WPQU708 | BEA077 | 9 | Jackson | MS-AL-LA |
| WPQU846 | BEA077 | 11 | Jackson | MS-AL-LA |
| WPQU847 | BEA078 | 11 | Birmingham | AL |
| WPQV247 | BEA078 | 14 | Birmingham | AL |
| WPQU778 | BEA079 | 10 | Montgomery | AL |
| WPQU848 | BEA079 | 11 | Montgomery | AL |
| WPQU931 | BEA080 | 12 | Mobile | AL |
| WPQU643 | BEA081 | 8 | Pensacola | FL |
| WPQU396 | BEA082 | 4 | Biloxi-Gulfport-Pascagoula | MS |
| WPQU458 | BEA082 | 5 | Biloxi-Gulfport-Pascagoula | MS |
| WPQU331 | BEA083 | 3 | New Orleans | LA-MS |
| WPQU397 | BEA083 | 4 | New Orleans | LA-MS |
| WPQU525 | BEA083 | 6 | New Orleans | LA-MS |
| WPQU398 | BEA084 | 4 | Baton Rouge | LA-MS |
| WPQU459 | BEA084 | 5 | Baton Rouge | LA-MS |
| WPQU850 | BEA085 | 11 | Lafayette | LA |
| WPQU933 | BEA085 | 12 | Lafayette | LA |
| WPQV252 | BEA086 | 14 | Lake Charles | LA |
| WPQU851 | BEA087 | 11 | Beaumont-Port Arthur | TX |
| WPQU710 | BEA088 | 9 | Shreveport-Bossler City | LA-AR |
| WPQU934 | BEA089 | 12 | Monroe | LA |
| WPQU991 | BEA089 | 13 | Monroe | LA |
| WPQU589 | BEA090 | 7 | Little Rock-North Little Rock | AR |

| WPOU644 | BEA090 | 8 | Little Rock-North Little Rock | AR |
| WPOU711 | BEA090 | 9 | Little Rock-North Little Rock | AR |
| WPOU200 | BEA091 | 1 | Fort Smith | AR-OK |
| WPOU285 | BEA091 | 2 | Fort Smith | AR-OK |
| WPOU992 | BEA092 | 13 | Fayetteville-Springdale-Rogers | AR-MO-OK |
| WPOV257 | BEA092 | 14 | Fayetteville-Springdale-Rogers | AR-MO-OK |
| WPOU527 | BEA093 | 6 | Joplin | MO-KS-OK |
| WPOV259 | BEA094 | 14 | Springfield | MO |
| WPOU713 | BEA095 | 9 | Jonesboro | AR-MO |
| WPOU335 | BEA096 | 3 | St. Louis | MO-IL |
| WPOU403 | BEA096 | 4 | St. Louis | MO-IL |
| WPOU466 | BEA096 | 5 | St. Louis | MO-IL |
| WPOU714 | BEA096 | 9 | St. Louis | MO-IL |
| WPOU781 | BEA096 | 10 | St. Louis | MO-IL |
| WPOU854 | BEA096 | 11 | St. Louis | MO-IL |
| WPOU937 | BEA096 | 12 | St. Louis | MO-IL |
| WPOV261 | BEA096 | 14 | St. Louis | MO-IL |
| WPOU336 | BEA097 | 3 | Springfield | IL-MO |
| WPOU592 | BEA098 | 7 | Columbia | MO |
| WPOU647 | BEA098 | 8 | Columbia | MO |
| WPOU337 | BEA099 | 3 | Kansas City | MO-KS |
| WPOU404 | BEA099 | 4 | Kansas City | MO-KS |
| WPOU469 | BEA099 | 5 | Kansas City | MO-KS |
| WPOU717 | BEA099 | 9 | Kansas City | MO-KS |
| WPOU855 | BEA099 | 11 | Kansas City | MO-KS |
| WPOU939 | BEA099 | 12 | Kansas City | MO-KS |
| WPOU594 | BEA100 | 7 | Des Moines | IA-IL-MO |
| WPOU718 | BEA100 | 9 | Des Moines | IA-IL-MO |
| WPOU856 | BEA100 | 11 | Des Moines | IA-IL-MO |
| WPOU470 | BEA101 | 5 | Peoria-Pekin | IL |
| WPOU595 | BEA101 | 7 | Peoria-Pekin | IL |
| WPOU719 | BEA101 | 9 | Peoria-Pekin | IL |
| WPOU857 | BEA102 | 11 | Davenport-Moline-Rock Island | IA-IL |
| WPOU720 | BEA103 | 9 | Cedar Rapids | IA |
| WPOU405 | BEA104 | 4 | Madison | WI-IL-IA |
| WPOV265 | BEA104 | 14 | Madison | WI-IL-IA |
| WPOU941 | BEA105 | 12 | La Crosse | WI-MN |
| WPOU995 | BEA106 | 13 | Rochester | MN-IA-WI |
| WPOU341 | BEA107 | 3 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU406 | BEA107 | 4 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU473 | BEA107 | 5 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU597 | BEA107 | 7 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU784 | BEA107 | 10 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU842 | BEA107 | 12 | Minneapolis-St. Paul | MN-WI-IA |
| WPOV268 | BEA107 | 14 | Minneapolis-St. Paul | MN-WI-IA |
| WPOU860 | BEA108 | 11 | Wausau | WI |
| WPOU861 | BEA109 | 11 | Duluth-Superior | MN-WI |
| WPOU943 | BEA109 | 12 | Duluth-Superior | MN-WI |
| WPOU408 | BEA110 | 4 | Grand Forks | ND-MN |
| WPOU944 | BEA111 | 12 | Minot | ND |
| WPOU533 | BEA112 | 6 | Bismarck | ND-MT-SD |
| WPOU723 | BEA113 | 9 | Fargo-Moorhead | ND-MN |
| WPOU865 | BEA114 | 11 | Aberdeen | SD |
| WPOU786 | BEA116 | 10 | Sioux Falls | SD-IA-MN-NE |
| WPOU846 | BEA117 | 12 | Sioux City | IA-NE-SD |
| WPOU478 | BEA118 | 5 | Omaha | NE-IA-MO |
| WPOU947 | BEA118 | 12 | Omaha | NE-IA-MO |
| WPOU727 | BEA119 | 9 | Lincoln | NE |

| | | | | |
|---|---|---|---|---|
| WPQU787 | BEA119 | 10 | Lincoln | NE |
| WPQU948 | BEA120 | 12 | Grand Island | NE |
| WPQU870 | BEA122 | 11 | Wichita | KS-OK |
| WPQU949 | BEA122 | 12 | Wichita | KS-OK |
| WPQU416 | BEA123 | 4 | Topeka | KS |
| WPQU871 | BEA124 | 11 | Tulsa | OK-KS |
| WPQV277 | BEA124 | 14 | Tulsa | OK-KS |
| WPQU999 | BEA125 | 13 | Oklahoma City | OK |
| WPQU729 | BEA126 | 9 | Western Oklahoma | OK |
| WPQU349 | BEA127 | 3 | Dallas-Fort Worth | TX-AR-OK |
| WPQU418 | BEA127 | 4 | Dallas-Fort Worth | TX-AR-OK |
| WPQU480 | BEA127 | 5 | Dallas-Fort Worth | TX-AR-OK |
| WPQU730 | BEA127 | 9 | Dallas-Fort Worth | TX-AR-OK |
| WPQU790 | BEA127 | 10 | Dallas-Fort Worth | TX-AR-OK |
| WPQU874 | BEA127 | 11 | Dallas-Fort Worth | TX-AR-OK |
| WPQU538 | BEA128 | 6 | Abilene | TX |
| WPQU953 | BEA129 | 12 | San Angelo | TX |
| WPQU218 | BEA130 | 1 | Austin-San Marcos | TX |
| WPQU350 | BEA130 | 3 | Austin-San Marcos | TX |
| WPQU420 | BEA130 | 4 | Austin-San Marcos | TX |
| WPQU481 | BEA130 | 5 | Austin-San Marcos | TX |
| WPQV201 | BEA130 | 13 | Austin-San Marcos | TX |
| WPQU280 | BEA131 | 2 | Houston-Galveston-Brazoria | TX |
| WPQU351 | BEA131 | 3 | Houston-Galveston-Brazoria | TX |
| WPQU421 | BEA131 | 4 | Houston-Galveston-Brazoria | TX |
| WPQU482 | BEA131 | 5 | Houston-Galveston-Brazoria | TX |
| WPQU731 | BEA131 | 9 | Houston-Galveston-Brazoria | TX |
| WPQU793 | BEA131 | 10 | Houston-Galveston-Brazoria | TX |
| WPQU877 | BEA131 | 11 | Houston-Galveston-Brazoria | TX |
| WPQU540 | BEA132 | 6 | Corpus Christi | TX |
| WPQU794 | BEA133 | 10 | McAllen-Edinburg-Mission | TX |
| WPQU352 | BEA134 | 3 | San Antonio | TX |
| WPQU422 | BEA134 | 4 | San Antonio | TX |
| WPQU605 | BEA134 | 7 | San Antonio | TX |
| WPQU954 | BEA134 | 12 | San Antonio | TX |
| WPQV202 | BEA134 | 13 | San Antonio | TX |
| WPQV284 | BEA135 | 14 | Odessa-Midland | TX |
| WPQU795 | BEA136 | 10 | Hobbs | NM-TX |
| WPQU606 | BEA137 | 7 | Lubbock | TX |
| WPQU659 | BEA137 | 8 | Lubbock | TX |
| WPQU607 | BEA138 | 7 | Amarillo | TX-NM |
| WPQU660 | BEA138 | 8 | Amarillo | TX-NM |
| WPQU423 | BEA139 | 4 | Santa Fe | NM |
| WPQU956 | BEA140 | 12 | Pueblo | CO-NM |
| WPQU424 | BEA141 | 4 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU544 | BEA141 | 6 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU879 | BEA141 | 11 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU957 | BEA141 | 12 | Denver-Boulder-Greeley | CO-KS-NE |
| WPQU958 | BEA142 | 12 | Scottsbluff | NE-WY |
| WPQU284 | BEA143 | 2 | Casper | WY-ID-UT |
| WPQU610 | BEA145 | 7 | Great Falls | MT |
| WPQU486 | BEA146 | 5 | Missoula | MT |
| WPQU663 | BEA146 | 8 | Missoula | MT |
| WPQU737 | BEA146 | 9 | Missoula | MT |
| WPQU960 | BEA146 | 12 | Missoula | MT |
| WPQU226 | BEA147 | 1 | Spokane | WA-ID |
| WPQU286 | BEA147 | 2 | Spokane | WA-ID |
| WPQV290 | BEA148 | 14 | Idaho Falls | ID-WY |

| | | | | |
|---|---|---|---|---|
| WPQV205 | BEA149 | 13 | Twin Falls | ID |
| WPQU548 | BEA150 | 6 | Boise City | ID-OR |
| WPQU814 | BEA150 | 7 | Boise City | ID-OR |
| WPQU739 | BEA151 | 9 | Reno | NV-CA |
| WPQU287 | BEA152 | 2 | Salt Lake City-Ogden | UT-ID |
| WPQU359 | BEA152 | 3 | Salt Lake City-Ogden | UT-ID |
| WPQU667 | BEA152 | 8 | Salt Lake City-Ogden | UT-ID |
| WPQU800 | BEA152 | 10 | Salt Lake City-Ogden | UT-ID |
| WPQU228 | BEA153 | 1 | Las Vegas | NV-AZ-UT |
| WPQU288 | BEA153 | 2 | Las Vegas | NV-AZ-UT |
| WPQU740 | BEA153 | 9 | Las Vegas | NV-AZ-UT |
| WPQU741 | BEA154 | 9 | Flagstaff | AZ-UT |
| WPQU801 | BEA154 | 10 | Flagstaff | AZ-UT |
| WPQV209 | BEA155 | 13 | Farmington | NM-CO |
| WPQU616 | BEA156 | 7 | Albuquerque | NM-AZ |
| WPQU362 | BEA157 | 3 | El Paso | TX-NM |
| WPQU550 | BEA158 | 6 | Phoenix-Mesa | AZ-NM |
| WPQU618 | BEA158 | 7 | Phoenix-Mesa | AZ-NM |
| WPQU802 | BEA158 | 10 | Phoenix-Mesa | AZ-NM |
| WPQU964 | BEA159 | 12 | Tucson | AZ |
| WPQU493 | BEA161 | 5 | San Diego | CA |
| WPQU619 | BEA161 | 7 | San Diego | CA |
| WPQU745 | BEA161 | 9 | San Diego | CA |
| WPQU803 | BEA161 | 10 | San Diego | CA |
| WPQU886 | BEA161 | 11 | San Diego | CA |
| WPQU746 | BEA162 | 9 | Fresno | CA |
| WPQU804 | BEA162 | 10 | Fresno | CA |
| WPQU747 | BEA163 | 9 | San Francisco-Oakland-San Jose | CA |
| WPQU805 | BEA163 | 10 | San Francisco-Oakland-San Jose | CA |
| WPQU495 | BEA164 | 5 | Sacramento-Yolo | CA |
| WPQU621 | BEA164 | 7 | Sacramento-Yolo | CA |
| WPQU965 | BEA164 | 12 | Sacramento-Yolo | CA |
| WPQU232 | BEA165 | 1 | Redding | CA-OR |
| WPQV212 | BEA166 | 13 | Eugene-Springfield | OR-CA |
| WPQV298 | BEA166 | 14 | Eugene-Springfield | OR-CA |
| WPQU496 | BEA167 | 5 | Portland-Salem | OR-WA |
| WPQU622 | BEA167 | 7 | Portland-Salem | OR-WA |
| WPQU669 | BEA167 | 8 | Portland-Salem | OR-WA |
| WPQV213 | BEA167 | 13 | Portland-Salem | OR-WA |
| WPQU966 | BEA168 | 12 | Pendleton | OR-WA |
| WPQU967 | BEA169 | 12 | Richland-Kennewick-Pasco | WA |
| WPQU499 | BEA170 | 5 | Seattle-Tacoma-Bremerton | WA |
| WPQU623 | BEA170 | 7 | Seattle-Tacoma-Bremerton | WA |
| WPQU671 | BEA170 | 8 | Seattle-Tacoma-Bremerton | WA |
| WPQU750 | BEA170 | 9 | Seattle-Tacoma-Bremerton | WA |
| WPQU808 | BEA170 | 10 | Seattle-Tacoma-Bremerton | WA |
| WPQU891 | BEA170 | 11 | Seattle-Tacoma-Bremerton | WA |
| WPQU366 | BEA171 | 3 | Anchorage | AK |
| WPQU429 | BEA172 | 4 | Honolulu | HI |
| WPQU552 | BEA172 | 6 | Honolulu | HI |
| WPQU893 | BEA172 | 11 | Honolulu | HI |
| WPQU969 | BEA172 | 12 | Honolulu | HI |
| WPQU894 | BEA174 | 11 | Puerto Rico and the U.S. Virgin Islands | PR-VI |
| WPQU970 | BEA174 | 12 | Puerto Rico and the U.S. Virgin Islands | PR-VI |
| WPQV214 | BEA174 | 13 | Puerto Rico and the U.S. Virgin Islands | PR-VI |
| WPQV302 | BEA174 | 14 | Puerto Rico and the U.S. Virgin Islands | PR-VI |

SCHEUDLE C

| Call Sign | Economic Area | Channel | Service Area | State(s) |
|---|---|---|---|---|
| WPQU237 | BEA001 | 2 | Bangor | ME |
| WPQU430 | BEA001 | 5 | Bangor | ME |
| WPQU501 | BEA001 | 6 | Bangor | ME |
| WPQU809 | BEA001 | 11 | Bangor | ME |
| WPQV215 | BEA001 | 14 | Bangor | ME |
| WPQU431 | BEA002 | 5 | Bangor | ME |
| WPQU502 | BEA002 | 6 | Portland | ME |
| WPQU626 | BEA002 | 8 | Portland | ME |
| WPQU972 | BEA002 | 13 | Portland | ME |
| WPQU973 | BEA004 | 13 | Burlington | VT-NY |
| WPQU756 | BEA016 | 10 | Staunton | VA-WV |
| WPQU300 | BEA017 | 3 | Roanoke | VA-NC-WV |
| WPQT977 | BEA021 | 1 | Greenville | NC |
| WPQU372 | BEA021 | 4 | Greenville | NC |
| WPQU681 | BEA021 | 9 | Greenville | NC |
| WPQU682 | BEA022 | 9 | Fayetteville | NC |
| WPQU821 | BEA022 | 11 | Fayetteville | NC |
| WPQV218 | BEA022 | 14 | Fayetteville | NC |
| WPQV220 | BEA025 | 14 | Wilmington | NC-SC |
| WPQV221 | BEA026 | 14 | Charleston-North Charleston | SC |
| WPQU562 | BEA027 | 7 | Augusta-Aiken | GA-SC |
| WPQU905 | BEA028 | 12 | Savannah | GA-SC |
| WPQU564 | BEA032 | 7 | Fort Myers-Cape Coral | FL |
| WPQU635 | BEA032 | 8 | Fort Myers-Cape Coral | FL |
| WPQU888 | BEA036 | 9 | Dothan | AL-FL-GA |
| WPQU765 | BEA036 | 10 | Dothan | AL-FL-GA |
| WPQU907 | BEA036 | 12 | Dothan | AL-FL-GA |
| WPQU248 | BEA037 | 2 | Albany | GA |
| WPQU567 | BEA037 | 7 | Albany | GA |
| WPQU828 | BEA038 | 11 | Macon | GA |
| WPQU249 | BEA039 | 2 | Columbus | GA-AL |
| WPQU766 | BEA039 | 10 | Columbus | GA-AL |
| WPQU981 | BEA039 | 13 | Columbus | GA-AL |
| WPQV228 | BEA042 | 14 | Asheville | NC |
| WPQU442 | BEA043 | 5 | Chattanooga | TN-GA |
| WPQU832 | BEA043 | 11 | Chattanooga | TN-GA |
| WPQU379 | BEA044 | 4 | Knoxville | TN |
| WPQU443 | BEA045 | 5 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQU569 | BEA045 | 7 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQU911 | BEA045 | 12 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQV230 | BEA045 | 14 | Johnson City-Kingsport-Bristol | TN-VA |
| WPQU693 | BEA046 | 9 | Hickory-Morganton | NC-TN |
| WPQU770 | BEA050 | 10 | Dayton-Springfield | OH |
| WPQU637 | BEA052 | 8 | Wheeling | WV-OH |
| WPQU834 | BEA052 | 11 | Wheeling | WV-OH |
| WPQV235 | BEA052 | 14 | Wheeling | WV-OH |
| WPQU314 | BEA054 | 3 | Erie | PA |
| WPQU382 | BEA054 | 4 | Erie | PA |
| WPQU515 | BEA054 | 6 | Erie | PA |
| WPQU698 | BEA054 | 9 | Erie | PA |
| WPQT987 | BEA058 | 1 | Northern Michigan | MI |
| WPQU255 | BEA058 | 2 | Northern Michigan | MI |

| | | | | |
|---|---|---|---|---|
| WPQU317 | BEA058 | 3 | Northern Michigan | MI |
| WPQU385 | BEA058 | 4 | Northern Michigan | MI |
| WPQU448 | BEA058 | 5 | Northern Michigan | MI |
| WPQU576 | BEA058 | 7 | Northern Michigan | MI |
| WPQU839 | BEA058 | 11 | Northern Michigan | MI |
| WPQU918 | BEA058 | 12 | Northern Michigan | MI |
| WPQU386 | BEA059 | 4 | Green Bay | WI-MI |
| WPQU577 | BEA059 | 7 | Green Bay | WI-MI |
| WPQV236 | BEA059 | 14 | Green Bay | WI-MI |
| WPQU578 | BEA060 | 7 | Appleton-Oshkosh-Neenah | WI |
| WPQU840 | BEA060 | 11 | Appleton-Oshkosh-Neenah | WI |
| WPQV237 | BEA060 | 14 | Appleton-Oshkosh-Neenah | WI |
| WPQT988 | BEA061 | 1 | Traverse City | MI |
| WPQU256 | BEA061 | 2 | Traverse City | MI |
| WPQU388 | BEA061 | 4 | Traverse City | MI |
| WPQU449 | BEA061 | 5 | Traverse City | MI |
| WPQU841 | BEA061 | 11 | Traverse City | MI |
| WPQU919 | BEA061 | 12 | Traverse City | MI |
| WPQU986 | BEA061 | 13 | Traverse City | MI |
| WPQV238 | BEA061 | 14 | Traverse City | MI |
| WPQU706 | BEA066 | 9 | Fort Wayne | IN |
| WPQU454 | BEA068 | 5 | Champaign-Urbana | IL |
| WPQU583 | BEA068 | 7 | Champaign-Urbana | IL |
| WPQU926 | BEA069 | 12 | Evansville-Henderson | IN-KY-IL |
| WPQV240 | BEA069 | 14 | Evansville-Henderson | IN-KY-IL |
| WPQT992 | BEA072 | 1 | Paducah | KY-IL |
| WPQU258 | BEA072 | 2 | Paducah | KY-IL |
| WPQU326 | BEA072 | 3 | Paducah | KY-IL |
| WPQU928 | BEA072 | 12 | Paducah | KY-IL |
| WPQU988 | BEA072 | 13 | Paducah | KY-IL |
| WPQU394 | BEA074 | 4 | Huntsville | AL-TN |
| WPQU259 | BEA075 | 2 | Tupelo | MS-AL-TN |
| WPQU395 | BEA075 | 4 | Tupelo | MS-AL-TN |
| WPQU522 | BEA075 | 6 | Tupelo | MS-AL-TN |
| WPQV245 | BEA075 | 14 | Tupelo | MS-AL-TN |
| WPQT994 | BEA076 | 1 | Greenville | MS |
| WPQU260 | BEA076 | 2 | Greenville | MS |
| WPQU456 | BEA076 | 5 | Greenville | MS |
| WPQU586 | BEA076 | 7 | Greenville | MS |
| WPQU930 | BEA079 | 12 | Montgomery | AL |
| WPQU262 | BEA080 | 2 | Mobile | AL |
| WPQV249 | BEA080 | 14 | Mobile | AL |
| WPQU263 | BEA082 | 2 | Biloxi-Gulfport-Pascagoula | MS |
| WPQU330 | BEA082 | 3 | Biloxi-Gulfport-Pascagoula | MS |
| WPQT995 | BEA084 | 1 | Baton Rouge | LA-MS |
| WPQT996 | BEA085 | 1 | Lafayette | LA |
| WPQU779 | BEA085 | 10 | Lafayette | LA |
| WPQT997 | BEA086 | 1 | Lake Charles | LA |
| WPQU400 | BEA086 | 4 | Lake Charles | LA |
| WPQU990 | BEA086 | 13 | Lake Charles | LA |
| WPQT998 | BEA087 | 1 | Beaumont-Port Arthur | TX |
| WPQV253 | BEA087 | 14 | Beaumont-Port Arthur | TX |
| WPQU264 | BEA088 | 2 | Shreveport-Bossier City | LA-AR |
| WPQU332 | BEA088 | 3 | Shreveport-Bossier City | LA-AR |

| | | | | |
|---|---|---|---|---|
| WPQU587 | BEA088 | 7 | Shreveport-Bossier City | LA-AR |
| WPQU852 | BEA088 | 11 | Shreveport-Bossier City | LA-AR |
| WPQU461 | BEA089 | 5 | Monroe | LA |
| WPQU588 | BEA089 | 7 | Monroe | LA |
| WPQU853 | BEA089 | 11 | Monroe | LA |
| WPQV255 | BEA089 | 14 | Monroe | LA |
| WPQU334 | BEA091 | 3 | Fort Smith | AR-OK |
| WPQU462 | BEA091 | 5 | Fort Smith | AR-OK |
| WPQU590 | BEA091 | 7 | Fort Smith | AR-OK |
| WPQU712 | BEA091 | 9 | Fort Smith | AR-OK |
| WPQU463 | BEA092 | 5 | Fayetteville-Springdale-Rogers | AR-MO-OK |
| WPQU935 | BEA092 | 12 | Fayetteville-Springdale-Rogers | AR-MO-OK |
| WPQU401 | BEA093 | 4 | Joplin | MO-KS-OK |
| WPQU464 | BEA093 | 5 | Joplin | MO-KS-OK |
| WPQU645 | BEA093 | 8 | Joplin | MO-KS-OK |
| WPQU780 | BEA093 | 10 | Joplin | MO-KS-OK |
| WPQU936 | BEA093 | 12 | Joplin | MO-KS-OK |
| WPQU993 | BEA093 | 13 | Joplin | MO-KS-OK |
| WPQV258 | BEA093 | 14 | Joplin | MO-KS-OK |
| WPQU402 | BEA094 | 4 | Springfield | MO |
| WPQU528 | BEA094 | 6 | Springfield | MO |
| WPQU646 | BEA094 | 8 | Springfield | MO |
| WPQU465 | BEA095 | 5 | Jonesboro | AR-MO |
| WPQV260 | BEA095 | 14 | Jonesboro | AR-MO |
| WPQU202 | BEA097 | 1 | Springfield | IL-MO |
| WPQU467 | BEA097 | 5 | Springfield | IL-MO |
| WPQU468 | BEA098 | 5 | Columbia | MO |
| WPQU529 | BEA098 | 6 | Columbia | MO |
| WPQU716 | BEA098 | 9 | Columbia | MO |
| WPQU782 | BEA098 | 10 | Columbia | MO |
| WPQU938 | BEA098 | 12 | Columbia | MO |
| WPQU338 | BEA101 | 3 | Peoria-Pekin | IL |
| WPQV264 | BEA102 | 14 | Davenport-Moline-Rock Island | IA-IL |
| WPQU339 | BEA103 | 3 | Cedar Rapids | IA |
| WPQU472 | BEA103 | 5 | Cedar Rapids | IA |
| WPQU596 | BEA103 | 7 | Cedar Rapids | IA |
| WPQU858 | BEA103 | 11 | Cedar Rapids | IA |
| WPQU530 | BEA104 | 6 | Madison | WI-IL-IA |
| WPQU648 | BEA105 | 8 | La Crosse | WI-MN |
| WPQU783 | BEA105 | 10 | La Crosse | WI-MN |
| WPQV266 | BEA105 | 14 | La Crosse | WI-MN |
| WPQU269 | BEA108 | 2 | Wausau | WI |
| WPQU407 | BEA108 | 4 | Wausau | WI |
| WPQU531 | BEA108 | 6 | Wausau | WI |
| WPQU649 | BEA108 | 8 | Wausau | WI |
| WPQU996 | BEA108 | 13 | Wausau | WI |
| WPQU205 | BEA109 | 1 | Duluth-Superior | MN-WI |
| WPQU270 | BEA109 | 2 | Duluth-Superior | MN-WI |
| WPQU342 | BEA109 | 3 | Duluth-Superior | MN-WI |
| WPQU650 | BEA109 | 8 | Duluth-Superior | MN-WI |
| WPQU785 | BEA109 | 10 | Duluth-Superior | MN-WI |
| WPQU206 | BEA110 | 1 | Grand Forks | ND-MN |
| WPQU271 | BEA110 | 2 | Grand Forks | ND-MN |
| WPQU343 | BEA110 | 3 | Grand Forks | ND-MN |

| | | | | |
|---|---|---|---|---|
| WPQU474 | BEA110 | 5 | Grand Forks | ND-MN |
| WPQU598 | BEA110 | 7 | Grand Forks | ND-MN |
| WPQU722 | BEA110 | 9 | Grand Forks | ND-MN |
| WPQU862 | BEA110 | 11 | Grand Forks | ND-MN |
| WPQU863 | BEA111 | 11 | Minot | ND |
| WPQU207 | BEA112 | 1 | Bismarck | ND-MT-SD |
| WPQU409 | BEA112 | 4 | Bismarck | ND-MT-SD |
| WPQU475 | BEA112 | 5 | Bismarck | ND-MT-SD |
| WPQU344 | BEA113 | 3 | Fargo-Moorhead | ND-MN |
| WPQU410 | BEA113 | 4 | Fargo-Moorhead | ND-MN |
| WPQU864 | BEA113 | 11 | Fargo-Moorhead | ND-MN |
| WPQV272 | BEA113 | 14 | Fargo-Moorhead | ND-MN |
| WPQU272 | BEA114 | 2 | Aberdeen | SD |
| WPQU345 | BEA114 | 3 | Aberdeen | SD |
| WPQU411 | BEA114 | 4 | Aberdeen | SD |
| WPQU476 | BEA114 | 5 | Aberdeen | SD |
| WPQU534 | BEA114 | 6 | Aberdeen | SD |
| WPQU599 | BEA114 | 7 | Aberdeen | SD |
| WPQU651 | BEA114 | 8 | Aberdeen | SD |
| WPQU724 | BEA114 | 9 | Aberdeen | SD |
| WPQU412 | BEA115 | 4 | Rapid City | SD-MT-NE-ND |
| WPQU209 | BEA116 | 1 | Sioux Falls | SD-IA-MN-NE |
| WPQU413 | BEA116 | 4 | Sioux Falls | SD-IA-MN-NE |
| WPQU600 | BEA116 | 7 | Sioux Falls | SD-IA-MN-NE |
| WPQU725 | BEA116 | 9 | Sioux Falls | SD-IA-MN-NE |
| WPQU866 | BEA116 | 11 | Sioux Falls | SD-IA-MN-NE |
| WPQU477 | BEA117 | 5 | Sioux City | IA-NE-SD |
| WPQU726 | BEA117 | 9 | Sioux City | IA-NE-SD |
| WPQU867 | BEA117 | 11 | Sioux City | IA-NE-SD |
| WPQV275 | BEA117 | 14 | Sioux City | IA-NE-SD |
| WPQU652 | BEA119 | 8 | Lincoln | NE |
| WPQU346 | BEA120 | 3 | Grand Island | NE |
| WPQU414 | BEA120 | 4 | Grand Island | NE |
| WPQU788 | BEA120 | 10 | Grand Island | NE |
| WPQU869 | BEA120 | 11 | Grand Island | NE |
| WPQU997 | BEA120 | 13 | Grand Island | NE |
| WPQU275 | BEA121 | 2 | North Platte | NE-CO |
| WPQU347 | BEA121 | 3 | North Platte | NE-CO |
| WPQU415 | BEA121 | 4 | North Platte | NE-CO |
| WPQU535 | BEA121 | 6 | North Platte | NE-CO |
| WPQU601 | BEA121 | 7 | North Platte | NE-CO |
| WPQU653 | BEA121 | 8 | North Platte | NE-CO |
| WPQU789 | BEA121 | 10 | North Platte | NE-CO |
| WPQU998 | BEA121 | 13 | North Platte | NE-CO |
| WPQU479 | BEA122 | 5 | Wichita | KS-OK |
| WPQU276 | BEA123 | 2 | Topeka | KS |
| WPQU536 | BEA123 | 6 | Topeka | KS |
| WPQU728 | BEA123 | 9 | Topeka | KS |
| WPQU950 | BEA123 | 12 | Topeka | KS |
| WPQU214 | BEA126 | 1 | Western Oklahoma | OK |
| WPQU278 | BEA126 | 2 | Western Oklahoma | OK |
| WPQU348 | BEA126 | 3 | Western Oklahoma | OK |
| WPQU417 | BEA126 | 4 | Western Oklahoma | OK |
| WPQU537 | BEA126 | 6 | Western Oklahoma | OK |

| | | | | |
|---|---|---|---|---|
| WPQU602 | BEA126 | 7 | Western Oklahoma | OK |
| WPQU654 | BEA126 | 8 | Western Oklahoma | OK |
| WPQU873 | BEA126 | 11 | Western Oklahoma | OK |
| WPQU951 | BEA126 | 12 | Western Oklahoma | OK |
| WPQU419 | BEA128 | 4 | Abilene | TX |
| WPQU655 | BEA128 | 8 | Abilene | TX |
| WPQU791 | BEA128 | 10 | Abilene | TX |
| WPQU952 | BEA128 | 12 | Abilene | TX |
| WPQV278 | BEA128 | 14 | Abilene | TX |
| WPQU217 | BEA129 | 1 | San Angelo | TX |
| WPQU279 | BEA129 | 2 | San Angelo | TX |
| WPQU539 | BEA129 | 6 | San Angelo | TX |
| WPQU656 | BEA129 | 8 | San Angelo | TX |
| WPQU792 | BEA129 | 10 | San Angelo | TX |
| WPQU876 | BEA129 | 11 | San Angelo | TX |
| WPQU219 | BEA132 | 1 | Corpus Christi | TX |
| WPQU281 | BEA132 | 2 | Corpus Christi | TX |
| WPQU483 | BEA132 | 5 | Corpus Christi | TX |
| WPQU657 | BEA132 | 8 | Corpus Christi | TX |
| WPQU220 | BEA133 | 1 | McAllen-Edinburg-Mission | TX |
| WPQU282 | BEA133 | 2 | McAllen-Edinburg-Mission | TX |
| WPQU658 | BEA133 | 8 | McAllen-Edinburg-Mission | TX |
| WPQU541 | BEA137 | 6 | Lubbock | TX |
| WPQU733 | BEA137 | 9 | Lubbock | TX |
| WPQU796 | BEA137 | 10 | Lubbock | TX |
| WPQU955 | BEA137 | 12 | Lubbock | TX |
| WPQV285 | BEA137 | 14 | Lubbock | TX |
| WPQU354 | BEA138 | 3 | Amarillo | TX-NM |
| WPQU542 | BEA138 | 6 | Amarillo | TX-NM |
| WPQU734 | BEA138 | 9 | Amarillo | TX-NM |
| WPQU355 | BEA139 | 3 | Santa Fe | NM |
| WPQU543 | BEA139 | 6 | Santa Fe | NM |
| WPQU224 | BEA142 | 1 | Scottsbluff | NE-WY |
| WPQU283 | BEA142 | 2 | Scottsbluff | NE-WY |
| WPQU356 | BEA142 | 3 | Scottsbluff | NE-WY |
| WPQU425 | BEA142 | 4 | Scottsbluff | NE-WY |
| WPQU545 | BEA142 | 6 | Scottsbluff | NE-WY |
| WPQU609 | BEA142 | 7 | Scottsbluff | NE-WY |
| WPQU661 | BEA142 | 8 | Scottsbluff | NE-WY |
| WPQU736 | BEA142 | 9 | Scottsbluff | NE-WY |
| WPQU797 | BEA142 | 10 | Scottsbluff | NE-WY |
| WPQU357 | BEA147 | 3 | Spokane | WA-ID |
| WPQU487 | BEA147 | 5 | Spokane | WA-ID |
| WPQU612 | BEA147 | 7 | Spokane | WA-ID |
| WPQU664 | BEA147 | 8 | Spokane | WA-ID |
| WPQU880 | BEA147 | 11 | Spokane | WA-ID |
| WPQU488 | BEA148 | 5 | Idaho Falls | ID-WY |
| WPQU547 | BEA148 | 6 | Idaho Falls | ID-WY |
| WPQU613 | BEA148 | 7 | Idaho Falls | ID-WY |
| WPQU665 | BEA148 | 8 | Idaho Falls | ID-WY |
| WPQU961 | BEA148 | 12 | Idaho Falls | ID-WY |
| WPQV204 | BEA148 | 13 | Idaho Falls | ID-WY |
| WPQU962 | BEA149 | 12 | Twin Falls | ID |
| WPQU358 | BEA150 | 3 | Boise City | ID-OR |

| | | | | |
|---|---|---|---|---|
| WPQU489 | BEA150 | 5 | Boise City | ID-OR |
| WPQU666 | BEA150 | 8 | Boise City | ID-OR |
| WPQU799 | BEA150 | 10 | Boise City | ID-OR |
| WPQV206 | BEA150 | 13 | Boise City | ID-OR |
| WPQV291 | BEA150 | 14 | Boise City | ID-OR |
| WPQU229 | BEA154 | 1 | Flagstaff | AZ-UT |
| WPQU289 | BEA154 | 2 | Flagstaff | AZ-UT |
| WPQU361 | BEA155 | 3 | Farmington | NM-CO |
| WPQU426 | BEA155 | 4 | Farmington | NM-CO |
| WPQU549 | BEA155 | 6 | Farmington | NM-CO |
| WPQU815 | BEA155 | 7 | Farmington | NM-CO |
| WPQU668 | BEA155 | 8 | Farmington | NM-CO |
| WPQU742 | BEA155 | 9 | Farmington | NM-CO |
| WPQU882 | BEA155 | 11 | Farmington | NM-CO |
| WPQU963 | BEA155 | 12 | Farmington | NM-CO |
| WPQU490 | BEA156 | 5 | Albuquerque | NM-AZ |
| WPQU291 | BEA157 | 2 | El Paso | TX-NM |
| WPQU617 | BEA157 | 7 | El Paso | TX-NM |
| WPQU748 | BEA166 | 9 | Eugene-Springfield | OR-CA |
| WPQU806 | BEA166 | 10 | Eugene-Springfield | OR-CA |
| WPQU234 | BEA168 | 1 | Pendleton | OR-WA |
| WPQU292 | BEA168 | 2 | Pendleton | OR-WA |
| WPQU497 | BEA168 | 5 | Pendleton | OR-WA |
| WPQU807 | BEA168 | 10 | Pendleton | OR-WA |
| WPQU889 | BEA168 | 11 | Pendleton | OR-WA |
| WPQV299 | BEA168 | 14 | Pendleton | OR-WA |
| WPQU498 | BEA169 | 5 | Richland-Kennewick-Pasco | WA |
| WPQU670 | BEA169 | 8 | Richland-Kennewick-Pasco | WA |
| WPQU890 | BEA169 | 11 | Richland-Kennewick-Pasco | WA |
| WPQV300 | BEA169 | 14 | Richland-Kennewick-Pasco | WA |

FILED: NEW YORK COUNTY CLERK 01/10/2013

NYSCEF DOC. NO. 2

INDEX NO. 654587/2012

RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,

INDEX NO.: 654587/2012

- against -

Plaintiff(s)

IDT CORPORATION, et al.,

Defendant(s)

## AFFIDAVIT OF SERVICE

State of New York     }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on **1/7/2013** at **2:10 PM** at **550 Broad Street, 17th Floor, Newark, NJ 07102**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **IDT Corporation**, a domestic corporation,

by delivering thereat a true copy of each to **Tom Nagle, Esq.** personally,

deponent knew said defendant so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Male
Skin : White
Hair : Gray
Age : 51 - 65 Yrs
Height : 5' 9" - 6' 0"
Weight :161-200 Lbs.
Other : Glasses

Sworn to before me this
8th day of January, 2013

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC # 01DI4977768
COMM EXP. 2/11/2015

_____
Adriano Gines
License No.845419

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

FILED: NEW YORK COUNTY CLERK 01/10/2013
NYSCEF DOC. NO. 3

INDEX NO. 654587/2012
RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,

INDEX NO.: 654587/2012

*Plaintiff(s)*

- against -

IDT CORPORATION, et al.,

*Defendant(s)*

## AFFIDAVIT OF SERVICE

State of New York      }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says:

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on **1/7/2013 at 2:10 PM at 550 Broad Street, 17th Floor, Newark, NJ 07102**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **IDT Corporation**, a domestic corporation,

by delivering thereat a true copy of each to **Tom Nagle, Esq.** personally,

deponent knew said defendant so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Male
Skin : White
Hair : Gray
Age : 51 - 65 Yrs.
Height : 5' 9" - 6' 0"
Weight :161-200 Lbs.
Other : Glasses

Sworn to before me this
8th day of January, 2013

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Adriano Gines
License No.845419

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

FILED: NEW YORK COUNTY CLERK 01/10/2013

NYSCEF DOC. NO. 4

INDEX NO. 654587/2012

RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,

INDEX NO.: 654587/2012

*Plaintiff(s)*

- against -

IDT CORPORATION, et al.,

*Defendant(s)*

## AFFIDAVIT OF SERVICE

State of New York   }
County of New York  }  ss.:

The undersigned, being duly sworn, deposes and says:

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on **1/7/2013 at 2:12 PM at 550 Broad Street, 17th Floor, Newark, NJ 07102**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **IDT Spectrum, LLC**, a domestic limited liability company,

by delivering thereat a true copy of each to **Tom Nagle, Esq.** personally.

deponent knew said limited liability company so served to be the limited liability company described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Male
Skin : White
Hair : Gray
Age : 51 - 65 Yrs.
Height : 5' 9" - 6' 0"
Weight : 161-200 Lbs.
Other : Glasses

Sworn to before me this
8th day of January, 2013

---
NOTARY-PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

---
Adriano Gines
License No. 845419

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

FILED: NEW YORK COUNTY CLERK 01/10/2013

INDEX NO. 654587/2012

NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,

INDEX NO.: 654587/2012

- against -

Plaintiff(s)

IDT CORPORATION, et al.,

Defendant(s)

## AFFIDAVIT OF SERVICE

State of New York   }
County of New York  }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on 1/7/2013 at 2:15 PM at 550 Broad Street, 17th Floor, Newark, NJ 07102

deponent served a(n) Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing

on Howard Jones

by delivering thereat a true copy of each to Tom Nagle, Esq. [Co-Worker], a person of suitable age and discretion. Said premises is defendant's actual place of business

Within 20 days of such delivery, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business at 550 Broad Street, 17th Floor, Newark, NJ 07102 and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant

Mailed Copy on 1/8/2013 at 6:00 PM

C/O IDT Corporation

Description of Person Served:
Gender: Male
Skin: White
Hair: Gray
Age: 51 - 65 Yrs.
Height: 5' 9" - 6' 0"
Weight:161-200 Lbs.
Other: Glasses

MILITARY SERVICE: Upon information and belief based upon the conversation(s) and observation(s) as aforesaid deponent avers that the defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

Sworn to before me this
8th day of January, 2013

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Adriano Gines
License No.845419

Serving By Irving, Inc. ; 233 Broadway, Suite 2201 ; New York, NY 10279

FILED: NEW YORK COUNTY CLERK 01/10/2013

NYSCEF DOC. NO. 6

INDEX NO. 654587/2012

RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,    INDEX NO.: 654587/2012

*Plaintiff(s)*

- against -

IDT CORPORATION, et al.,

*Defendant(s)*

## AFFIDAVIT OF SERVICE

State of New York        }
County of New York    }    ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on 1/7/2013 at 2:14 PM at 550 Broad Street, 17th Floor, Newark, NJ 07102

deponent served a(n) Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing

on Samuel (Shmuel) Jonas

by delivering thereat a true copy of each to Tom Nagle, Esq. [Co-Worker], a person of suitable age and discretion  Said premises is defendant's actual place of business

Within 20 days of such delivery, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business at 550 Broad Street, 17th Floor, Newark, NJ 07102 and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

Mailed Copy on 1/8/2013 at 6:00 PM

    C/O IDT Corporation

Description of Person Served:
Gender: Male
Skin: White
Hair: Gray
Age: 51 - 65 Yrs.
Height: 5' 9" - 6' 0"
Weight:161-200 Lbs.
Other: Glasses

MILITARY SERVICE   Upon information and belief based upon the conversation(s) and observation(s) as aforesaid deponent avers that the defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act

Sworn to before me this
8th day of January, 2013

_____
NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC # 01DI4977768
COMM EXP  2/11/2015

_____
Adriano Gines
License No.845419

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

FILED: NEW YORK COUNTY CLERK 01/10/2013
NYSCEF DOC. NO.

INDEX NO. 654587/2012

RECEIVED NYSCEF: 01/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS TECHNOLOGIES, LLC,    INDEX NO.: 654587/2012

                                                    Plaintiff(s)

                    - against -

IDT CORPORATION, et al.,

                                                    Defendant(s)

## AFFIDAVIT OF SERVICE

State of New York    }
County of New York   }  ss.:

The undersigned, being duly sworn, deposes and says:

Deponent is not a party herein, is over 18 years of age and resides in Avenel, New Jersey

That on 1/7/2013 at 2:13 PM at 550 Broad Street, 17th Floor, Newark, NJ 07102

deponent served a(n) Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing

on Menachem Ash

by delivering thereat a true copy of each to Tom Nagle, Esq. [Co-Worker], a person of suitable age and discretion. Said premises is defendant's actual place of business.

Within 20 days of such delivery, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business at 550 Broad Street, 17th Floor, Newark, NJ 07102 and deposited said envelope in an official depository under the exclusive care and custody of the U S Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

Mailed Copy on 1/8/2013 at 6:00 PM

    C/O IDT Corporation

Description of Person Served:
Gender: Male
Skin: White
Hair: Gray
Age: 51 - 65 Yrs.
Height: 5' 9" - 6' 0"
Weight: 161-200 Lbs.
Other: Glasses

MILITARY SERVICE: Upon information and belief based upon the conversation(s) and observation(s) as aforesaid deponent avers that the defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

Sworn to before me this
8th day of January, 2013

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

_____
Adriano Gines
License No.845419

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICHAEL RAPAPORT and SPECTRUM HOLDINGS
TECHNOLOGIES, LLC,

                              Plaintiffs,

            -against-

IDT CORPORATION, IDT SPECTRUM, INC., IDT
SPECTRUM, LLC, HOWARD JONAS, SAMUEL
(SHMUEL) JONAS, and MENACHEM ASH,

                       Defendants.

Civil Action No. 654587/2012

## NOTICE OF FILING OF NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendants IDT Corporation, IDT Spectrum, Inc., IDT

Spectrum LLC, Howard Jonas, Samuel (Shmuel) Jonas, and Menachem Ash have of this date

filed a Notice of Removal, a copy of which is attached, in the office of the Clerk for the United

States District Court for the Southern District of New York.

Dated: Armonk, New York
        February 5, 2013

                             BOIES, SCHILLER & FLEXNER LLP

                        By: _____

                          Edward Normand
                          Jason Cyrulnik
                          333 Main Street
                          Armonk, New York 10504
                          Telephone: 914.749.8200
                          Facsimile: 914.749.8300
                          *Attorneys for All Defendants*

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MICHAEL RAPAPORT and SPECTRUM HOLDINGS
TECHNOLOGIES, LLC,

                          Plaintiffs,             Civil Action No._____

        -against-

                                    DECLARATION OF SHMUEL
                                    JONAS IN SUPPORT OF
                                    DEFENDANTS' NOTICE OF
                                    REMOVAL

IDT CORPORATION, IDT SPECTRUM, INC., IDT
SPECTRUM, LLC, HOWARD JONAS, SAMUEL
(SHMUEL) JONAS, and MENACHEM ASH,

                          Defendants.
-------------------------------------------------------------------------x

     1.     I am Chief Operating Officer for IDT Corporation, defendant in this action

(together with IDT Spectrum, Inc. and IDT Spectrum, LLC, "IDT"). I submit this declaration in

support of Defendants' Notice of Removal filed on February 5, 2013.

     2.     Based on knowledge acquired as Chief Operating Officer for IDT Corporation, I

am familiar with the facts, transactions and occurrences underlying this dispute.

     3.     At the time Plaintiffs commenced this action in state court and at the time of

removal, I was (and am) an individual citizen of New Jersey residing and domiciled in

Englewood, New Jersey.

     4.     Howard Jonas is not a party to the Agreement, as defined in Plaintiffs' Complaint

and attached to the Complaint as Exhibit A.

     5.     Howard Jonas has no individual ownership rights, title or interest in the licenses

governed by the Agreement.

6.    Howard Jonas has no individual ownership rights, title or interest in the LICT portfolio of licenses, as defined in Plaintiffs' Complaint.

7.    Howard Jonas has no individual ownership rights, title or interest in the Level 3 portfolio of licenses, as defined in Plaintiffs' Complaint.

8.    Menachem Ash has no individual ownership rights, title or interest in the LICT portfolio of licenses, as defined in Plaintiffs' Complaint.

9.    Menachem Ash has no individual ownership rights, title or interest in the Level 3 portfolio of licenses, as defined in Plaintiffs' Complaint.

10.   IDT Spectrum is not intentionally harming its own business interests by refraining from selling or leasing the licenses governed by the Agreement. IDT Spectrum is actively seeking to monetize its licenses. IDT has paid in full, and Plaintiffs have acknowledged that they were paid in full, "any and all amounts due as of [December 24, 2012] to the Rapaport Parties pursuant to the Spectrum Portfolio Agreement." IDT has also paid (under protest) Rapaport all additional commissions set forth in the Agreement based on revenues earned since December 24, 2012.

11.   On information and belief, Doug Lockie is providing consulting services to Plaintiffs. Lockie has refused to provide such services to IDT because of his ongoing business relationship with Plaintiffs, notwithstanding that Lockie was IDT's consultant and advisor prior to being poached by Rapaport.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: February 5, 2013

2